(54 N. W. Rep. 547.)

---

NATIONAL BANK OF NORTH DAKOTA *vs.* FREDERICK LEMKE.

Opinion filed March 1st, 1893.

**Usury—Repeal of Statute—Penalty.**

Under § 4767, Comp. Laws, the penalties prescribed by § 3723, Id., against usury, were not extinguished by the repeal of said § 3723 by Ch. 184, Laws 1890, as to any transactions had and completed prior to the enactment of said repealing statute.

**Erroneous Instruction—Harmless Error.**

While the giving of an erroneous instruction raises an immediate presumption of prejudice, yet a case will not be reversed by reason of such error where it is clear from the record that the complaining party could not have been prejudiced thereby.

Appeal from District Court, Towner County; *Morgan*, J.

Action in claim and delivery by the National Bank of North Dakota, a corporation, against Frederick Lemke. Defendant had judgment, and plaintiff appeals.

Affirmed.

*A. S. Drake,* (*H. C. Meacham,* of counsel,) for appellant.
*John W. Maher* and *M. H. Brennan,* for respondent.

BARTHOLOMEW, C. J. This action was brought, in claim and delivery, to obtain possession of certain personal property which the National Bank of North Dakota, plaintiff and appellant, claimed as assignee of a chattel mortgagee. The defendant and respondent, Lemke, was the mortgagor. The trial resulted in a verdict and judgment·for respondent. The facts are somewhat involved, and the evidence upon some points conflicting. On November 24th, 1888, Lemke and his wife executed to the firm of Whited & Johnson their promissory note for $633.65, drawing interest at 12 per cent. per annum, and due October 1st, 1889. This note was secured by a chattel mortgage covering some—perhaps all—of the property here in controversy. This note is indorsed October 28th, 1889, with interest to October 1st, 1889, and $180.88 to apply upon the principal. This indorsement was made by Whithed & Johnson. Following this is the indorsement without recourse by said firm, and on April 2nd, 1891, a further payment of $9.50; and under date of April 15th, 1891, there is a memorandum indorsed on the note, showing balance due on April 2nd, 1891, to be $531.65. It is undisputed that Whited & Johnson transferred the note to E. A. Mears, but at just what date does not appear. It must, however, have been subsequent to October 28th, 1889, and after the date of the maturity of the note. On April 2nd, 1891, Lemke and wife executed a new note for $531.65 to E. A. Mears, due October 1st, 1891, and bearing 12 per cent. interest. This note was secured by chattel mortgage covering the same property as the first mortgage. The old note was not delivered to the makers when the new note was taken. Both notes subsequently came into the possession of the appellant bank, of which E. A. Mears has been president since its organization. There was some claim made that the appellant received these notes before the maturity of the note of April 2nd, 1891, but this question was submitted to the jury upon an instruction requested by appellant, and their verdict is conclusive of the fact that appellant received such note after maturity. One of the defenses set up in the answer is that the only consideration for

the second note was the balance due on the first, and that in fact there was no balance remaining when the second note was given, and 'hence it was without consideration. Appellant's theory of the case is, also, that the consideration of the second note was the balance due upon the first, but the parties differ widely as to what that balance was. Nearly all the payments on the original note were made by the delivery of elevator wheat checks, some of which were delivered to Whited & Johnson, and some to the agent of Mears. The mortgage covered successive wheat crops on certain land, and, as this wheat was hauled to the elevators, wheat checks were taken, and delivered to the party holding the note. But during the time that Mears held the original note, and before the second note was given, he also held various small notes against respondent, aggregating, according to the testimony, $319.60. Appellant claims that this money arising from the sale of the wheat represented by the checks was; by agreement, to be applied to the payment of these small notes, and there is' testimony to that effect. This respondent, in his testimony, denies. It is not very material. When the second note was given, these small notes were delivered to, or at least left with, respondent. With full knowledge of the fact, he has retained them, with no offer to return. Hence, as against him, it must be held, either that the small notes were paid by the wheat payments, or that they formed, *pro tanto*, the consideration of the second note. It would be necessary, therefore, in order to establish a total absence of consideration in the second note, to show that the payments made not only extinguished the note of November 24th, 1888, but also the smaller notes. Further, the agent of Mears testifies that at various times he let Lemke have cash for expenses,—$25 at one time, and $5 or $10 at two or three other times; that this money was to be repaid from the proceeds of the wheat; that he simply put slips in the money drawer to represent the cash so advanced, and when the wheat was sold he replaced the money, and destroyed the slips, and no record was made of the transactions. This testimony respondent denies, and we have no means of

knowing what the jury found to be the fact in this regard. But whatever amount, if any, the jury found had been so advanced, must be first deducted from the payments, and the balance, only, applied on the notes. Respondent claims that the payments made, and as to which there is no conflict in the testimony, were sufficient to extinguish all legal claims held by Mears againt him, and that at the time of the execution of the note of April 2nd, 1891, he owed Mears nothing. It is averred in the answer, and respondent's testimony supports the averment, that the original note of $633.65 was in fact usurious; that respondent received $465.65 on said note, and no more; and that the excess, to-wit: $168, was simply an usurious bonus. There is no evidence in the abstract that contradicts this, but there is documentary evidence tending to corroborate it. The jury would have been unwarranted in finding the fact otherwise. The court instructed the jury that, under the law at the time said note was given, "any person receiving, retaining, or contracting for any higher rate of interest than 12 per cent. per annum forfeits all the interest so taken, received, retained, or contracted for, and when the note is sued on the plaintiff can recover only the principal." Under this instruction the jury could consider that note as for $465.65, and no more. The small notes amounted to $319.60, making a total of $785.25 to be paid without reference to the cash advances. The indorsement on the note made by Whited & Johnson amounts (interest and principal indorsed separately) to $245.50. It is undisputed that the wheat checks delivered by respondent to Whited & Johnson at and prior to the making of such indorsement sold for $397. A part of the indorsement on the note at that time reads, "Balance wheat for atty. fee, Eaton suit, as per contract," and there was evidence that Mr. Whited at one time acted as attorney for respondent in a suit with one Eaton. But respondent testified that he owed Mr. Whited nothing at that time as attorney's fees, or in any other capacity, and that he repeatedly asked to see the note on which the indorsement was made, but that his request was always evaded in some manner,

but that Whited & Johnson gave him a receipt for $397 "to apply on what he owes on note." This receipt is in evidence. The abstract contains nothing to contradict this testimony, and the jury must have have allowed respondent credit on this payment for $397. The amount of wheat for which the agent of Mr. Mears gave respondent receipts, all of which are in evidence, figured at the prices which the agent swears he received for the respective amounts, makes the further sum of $439.10; making total payments $836.10, or $50.85 in excess of the amount of the original note, shorn of its usury, and all the smaller notes. This excess more than equals the largest amount of cash advances claimed.

It is thus clear that at the time of the execution of the note of April 2nd, 1891, respondent owed E. A. Mears, to whom the note was given, and who is president of the appellant bank, nothing; and such note is entirely without consideration, unless appellant's contention that the court erred in its instruction heretofore quoted, as to the effect of usury in the original note, can be sustained. The instruction given was clearly in harmony with § 3723, Comp. Laws 1887, which was in force when the note was given, but this section was repealed by Ch. 184, Laws 1890, and hence was not in force when this action was tried; and it is urged that this repeal wiped out all the penalties and forfeitures under the old statute, and left the note to be enforced in its entirety. In other words, that neither the penalty prescribed by said § 3723, nor by the usury law enacted in 1890, and which repealed the old law, could be applied to this particular transaction, and, even if confessedly usurious under either or both statutes, still there is no remedy left for the enforcement of the consequences of such usury. That the repeal of a statute penal in its nature, without a saving clause, operates to absolutely extinguish all penalties under such law, is, we think, quite well settled. See *Ewell* v. *Daggs*, 108 U. S. 143, 2 Sup. Ct. Rep. 408, and cases there cited. But this rule of law has been abrogated by a general provision in this state. Section 4767, Comp. Laws, reads: "The repeal of

any statute by the legislative assembly shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute, unless the repealing act shall so expressly provide; and such statute shall be treated as still remaining in force, for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture, or liability." Other states have substantially this same provision. For a construction of the Indiana statute, see *W. U. Tel. Co.* v. *Brown*, 108 Ind. 538, 8 N. E. Rep. 171. For Missouri statute, see *State* v. *Kansas City*, etc., R. Co., 32 Fed. Rep. 722. For Kentucky statute, see *Com.* v. *Sherman*, 85 Ky. 686, 4 S. W. Rep. 790. In each of these cases the court enforces a penalty incurred under a statute that had been repealed prior to the time of the trial. The repealing statute of this state passed in 1890 is silent as to the penalties incurred under the former law. Hence, under this plain provision of § 4767, Comp. Laws, appellant is not relieved from that penalty.

On the question of payment, the court instructed the jury that, if they found that payments were made in wheat, they should allow respondent the highest market price from the time of delivery to the time of trial. This was clearly error. The court had in mind a rule sometimes applied in cases of conversion, but clearly foreign to this case. Appellant insists that for this error the case must be reversed. When an erroneous instruction is given an immediate presumption of prejudice arises, and the case must be reversed, unless it is clear that such error, under the facts, could have worked no prejudice to the complaining party. *McKay* v. *Leonard*, 17 Iowa, 569; *Hook, Adm'r* v. *Craghead*, 35 Mo. 380; *Freeman* v. *Rankins*, 21 Me. 446, Hayne, New Trials, § 287, and cases cited. It is equally certain that when the error could work no injury to the complaining party the case will not be reversed by reason thereof. See last citations. In the statement of facts as heretofore made, we have either taken facts about which there was no dispute in the testimony, and which the jury were bound to accept as true, or we have in every case taken

appellant's amounts and computations; and yet as we have seen, the payments exceeded all legal demands. It is clear that the error could work no injury to appellant.

The defense of duress is pleaded, and much of appellant's brief is devoted to that subject, but, as the case must be affirmed by reason of the total want of consideration for the note secured by the mortgage under which appellant claims the property, the question of duress becomes immaterial.

Affirmed.  All concur.