MARY WORLITZ, Respondent, v. MAX MILLER, Appellant.

(184 N. W. 806.)

**Appeal and error — exclusion of testimony as to plaintiff's chastity held not error, where witness did not know meaning of word and other testimony was introduced.**

1. Certain rulings on the admission of evidence examined and, for reasons stated in the opinion, held to be non-prejudicial.

**Appeal and error — erroneous instruction ordinarily presumed prejudicial.**

2. While the giving of an erroneous instruction ordinarily raises a presumption of prejudice, yet a case will not be reversed by reason thereof, where it is clear from the record that the complaining party could not have been prejudiced thereby.

**Appeal and error — erroneous instruction does not require reversal where there could be no prejudice.**

3. Certain instructions given in this case examined and for reasons stated in the opinion held to be non-prejudicial.

Opinion filed Sept. 26, 1921. Rehearing denied Oct. 29, 1921.

From a judgment of the District Court of Kidder County, *Coffey, J.,* defendant appeals.

Affirmed.

*Geo. Musson* and *E. T. Burke,* for appellant.

*Cameron & Wattam* and *Arne Vinje,* for respondent.

Where evidence cumulative in its nature is excluded or stricken out, even though done so improperly it is not prejudicial if the issue covered thereby is not in dispute. State v. Moeller, 20 N. D. 114.

The question of the competency of a witness, after hearing the evidence, is so largely a question of fact, and so particularly within the knowledge and discretion of the trial court, that the appellate court will not interfere unless the record shows a clear case of error. Guthre v. Shafer, 7 Okla. 459; Mills v. Cook, (Tex.) 57 S. W. 81; People v. Harrison 18 Cal. App. 285; 123 Pac. 200; People v. Tyree (Cal.) 132 Pac. 784.

The question whether the witness offered has sufficient understanding to be competent as a witness is a preliminary question for the court. Pittsburg and W. R. Co. v. Thomson, 82 Fed. 720; McKinstry v. Tuscaloosa, 54 So. 629; Covington v. O'Meara, 133 Ky. 762; Bowdle v. Detroit Street Ry. Co. 103 Mich. 272.

The question as to whether a witness possesses the requisite qualifications is for the trial court, and its ruling will not be reversed in the absence of palpable error. Booneman v. Chicago, St. P. M. & O. R. Co. 19 S. D. 459; 104 N. W. 808.

The rulings of the trial court as to the qualifications of a witness offered as an expert will not be reversed in the absence of palpable error appearing in the record. Waterhouse v. Jos. Schlitz Brewing Co. 16 S. D. 592; 94 N. W. 587.

CHRISTIANSON, J   This is an action for indecent assault.   The plaintiff recovered a verdict of $700, and defendant has appealed from the judgment entered upon the verdict.   The defendant is the owner of a store in the village of Tuttle in Kidder county in this state.   The plaintiff is a married woman, living with her husband and two children in said village of Tuttle.   Her husband is a laborer.   In the fall of 1920 the plaintiff and her husband rented from the defendant a small building which adjoins his general store, for the purpose of operating a cream station therein, and the plaintiff thereupon engaged in the business of buying cream in that place.   The only method of closing or locking the cream station at night was by locking the door leading to the street from the inside and passing out through a door leading into the store.   The complaint alleges, and the plaintiff testified, that on the evening of August 25, 1920, after turn-

ing out the electric lights in her place of business and on attempting to pass out through the door leading into the store as usual, the plaintiff was confronted by the defendant who had placed himself in the door and who solicited her to have sexual intercourse with him; that upon her refusal to accede to his demands he seized her violently and forcibly by the arms, leaving black and blue marks thereon; that he placed his hands on her breasts and lifted her dress, and placed his hand on her private parts; that after a struggle of some duration, during which the plaintiff slapped the defendant and kicked his shins, the defendant released the plaintiff, and she thereupon left the place and went to her home. The defendant denied the whole transaction as testified to by the plaintiff, except that he admitted that he was in the cream station with the plaintiff on the evening in question. He claimed, however, that she called him into the cream station for the ostensible purpose of having him help her prepare the report of the day's business, and that after he came in there, she placed her arms around his neck and kissed him, and told him that she wanted some loving and kisses, and that he repelled her advances. It is apparent therefore that there was a square conflict in the evidence, and that it was for the jury to say whether the version of the plaintiff or that of the defendant was the true one. The sufficiency of the evidence is not questioned. On the contrary, on the oral argument, appellant's counsel expressly stated that he did not question the sufficiency of the evidence; but contended that the evidence was of such unsatisfactory nature that the errors, which he asserted occurred during the trial of the cause, required the granting of a new trial.

Three assignments of error are specified and argued on this appeal.

(1) It is contended that the court erred in refusing to permit one Amelia Hoher to testify regarding plaintiff's reputation for chastity. An examination of the record bearing upon this feature of the case leads us to the conclusion that no error was committed. The record shows that shortly before the witness Amelia Hoher was called another witness, Lenofred Elliott, was permitted to testify, and did testify, that the reputation of the plaintiff, Mary Worlitz, for chastity was bad. The witness Amelia Hoher was asked the following questions, and gave the following answers thereto:

"Q. When I ask you this question, answer yes or no; do you know the reputation of Mrs. Worlitz for chastity? A. Yes.

"The Court: Where, and when?

"Q. Do you know the reputation of Mrs. Worlitz for chastity, on August 25, 1920, in Tuttle? A. Yes.

"Q. What was that reputation? A. Bad."

On cross-examination she stated that she did not know what the word "chastity" meant and "had never heard the word before." The court thereupon directed that her testimony to the effect that Mary Worlitz's reputation for chastity was bad be stricken. Defendant's counsel in effect conceded the correctness of this ruling, because when another question relating to this matter was put and objection thereto sustained defendant's counsel stated:

"We don't want to insist upon this, your honor; we understand that the witness cannot be asked in regard to this word 'chastity' again, as she has already made the statement she does not know what it means."

Immediately following this statement defendant's counsel made the following request:

"The defendant would ask a few minutes' recess at this time, as there are some new witnesses that have just come in and we would like to interview them."

The court thereupon directed that a five-minute recess be had. Immediately following the recess the witness Amelia Hoher was recalled, and she was again asked if she knew the reputation of Mrs. Worlitz for chastity on August 25, 1920. Plaintiff's counsel objected to the question on the ground that the witness had already admitted that she did not know what the word meant. Thereupon, in answer to questions propounded by defendant's counsel, she testified that during the recess she had consulted a dictionary and ascertained the meaning of the word "chastity." Plaintiff's counsel asked for permission to cross-examine before the question was put, and upon asking her what the word "reputation" meant she refused to testify, and from answers given to questions formerly propounded it appeared that she did not know the meaning of the word "reputation." The court sustained an objection to the question on the ground that the witness had not shown herself qualified to answer. No request was made that the witness be given an opportunity to consult a dictionary or otherwise inform herself as to the meaning of the word "reputation." And as already stated, it also appears that one other witness did testify that the reputation of the plaintiff for chastity was bad. The plaintiff offered no testimony tending to contradict the testimony offered by the defendant on this point, so that so far as the record is con-

cerned the testimony adduced by the defendant that plaintiff's reputation for chastity was bad was uncontradicted. It would also seem that if the plaintiff's reputation for chastity was bad must have been a matter of such common comment that other witnesses could readily have been procured to testify to that fact. Under all the circumstances we cannot say, upon the record before us, that the trial court abused the judicial discretion with which it was vested in ruling as it did.

(2) It is next contended that the trial court erred in instructing the jury as follows:

"A woman has a right in pursuit of her walk of life to be free from molestation and assaults, whether they be physical assaults, or indecent assaults, as alleged in this case, and she has such a right to be free from these assaults, and any violation of this right that would cause her humiliation, pain, and suffering, or mortification such as charged in this complaint, would entitle her to damages for such violation of her rights. It would be the province of the jury, if they find that such rights have been violated, to award damages, such as would compensate her for injuries sustained."

The argument is made that under this instruction the jury might have awarded damages to the plaintiff merely for molestation, even though no assault was committed at all. We do not believe that the instruction is susceptible of such interpretation. The instruction refers to assaults "as alleged in this case." Under the evidence in this case the jury could not, in our opinion, possibly have found a verdict for the plaintiff under this instruction, unless they believed plaintiff's story that defendant actually committed an assault upon her such as she testified to. If her story was true he did commit such assault; if defendant's story was true he did not, and was wholly blameless. In our opinion the instruction given was in no manner prejudicial to the defendant.

(3) The defendant also predicates error upon the following instruction:

"If any witness has willfully testified falsely, in your judgment, you are at liberty to wholly disregard the testimony of such witness, except in so far as the same is corroborated by other credible evidence in the case; by other evidence which you have confidence in and believe. That would be as to material points."

It is contended that it is only where a witness has willfully testified falsely as to any material fact in the case that the jury is justified in dis-

regarding his testimony, and that the instruction in this case is erroneous because it did not so inform the jury. In appellant's brief it is stated that defendant's counsel called the trial court's attention to this omission, and that the trial court thereupon added the sentence at the end of the instruction, to wit, "That would be as to material points." Conceding, without deciding, that the instruction is erroneous, it does not follow that the cause must be reversed.

It is true that ordinarily, where an erroneous instruction is given which might operate to the injury of the party who assails it, a presumption of prejudice arises; but it is equally true that when the error could work no injury to the complaining party the case will not be reversed by reason thereof. In other words, a cause will not be reversed because an erroneous instruction has been given, where it appears from the record that the instruction could not have prejudiced the complaining party. See National Bank v. Lemke, 3 N. D. 154, 159, 54 N. W. 919, and authorities therein cited. The record in this case shows that the defendant could not possibly have been prejudiced by the language in which the instruction was couched, for whatever conflict there was in the evidence was upon material facts. Hence, the jury could not have found that any of defendant's witnesses testified falsely upon any fact, unless it was upon a material fact. So, upon the record in this case, the instruction could in no event be prejudicial. This disposes of all the errors assigned and argued on this appeal, and it follows from what has been said that the judgment appealed from must be affirmed.

BIRDZELL, BRONSON, and GRACE, JJ., concur.

ROBINSON, J. (dissenting). In this case the majority decision is strictly in accordance with the law as commonly administered. However, I am inclined to dissent from a decision which makes it unsafe for a man of means to be alone with a needy or adventurous woman.. I also dissent from any verdict when it appears beyond doubt that it is clearly and grossly untrue. The verdict in this case is, for actual damages, $500, for punitive damages, $200. Now, on the testimony of the plaintiff herself it cannot be truly said that her actual damages amounted to $10, nor half of $10. She does testify that defendant pinched her arms so as to make black and blue spots, but on that she has no corroboration, and it is probably untrue. She does testify, in effect, that defendant forced his presence on her for half an hour from 8 to 8:30 p. m. by the watch. That

is not true. If the defendant had been an intruder in her room she could have dismissed him in a moment with a few sharp words. If he was in her room half an hour, it was with her assent and dalliance. Her complaint avers that on August 25, 1920, at Tuttle, the defendant assaulted her with intent to ravish her. That is false, and she knew it to be false. There is not in the record a thing to indicate that defendant ever thought of ravishing the plaintiff. As a place to buy cream the plaintiff rented from defendant a 10x12 shack at the rear of his store. It had two windows; it had two doors. One door opened out to the street, and one into the store. She swears she paid defendant two $10 bills for two months' rent in advance. That is not true. She paid only one month in advance, and it seems that the trouble commenced when the defendant demanded rent in advance for the second month. Plaintiff swears that defendant made advances to her. He swears that she made advances to him. The truth of the matter cannot be determined. But this is certain: defendant kept a general store which was well lighted by electricity, and the light shone into the 10x12 shack at the rear end of the store. The store was open for customers. If the defendant remained in the shack half an hour, then it must have been a case of dalliance, a mutual courtship. The plaintiff was not hurt. She swears her dress was not torn. She does not swear to any injury except the pinching of her arms.

As we read in scripture, when Joseph met Potiphar's wife, all the advances were made by her, though he was the slave of her husband. There was no gentle dalliance or half-hour courtship. When Joseph said "No," it was said in a way to indicate that he meant it, and that was the end of it. But she was persistent, and at last, after several denials, she caught Joseph by his garment, and he left his garment in her hand and fled and got out. Then she took the garment with her and said unto her husband:

"The Hebrew servant, which thou hast brought unto us, came in unto me to mock me; and it came to pass, as I lifted up my voice and cried, that he left his garment with me and fled."

Then, of course, the husband believed her, and Joseph was taken and put in prison, where he remained until he interpreted the dreams of Pharaoh, which made him ruler of all the land of Egypt. From such evidence as Mrs. Potiphar gave, the Tuttle jury would doubtless have convicted Joseph, and assessed heavy damages against him. What fools we mortals be! In cases of this kind it is high time for the courts to get

away from the habit of washing their hands like Pilate and throwing the blame on the jury.