## COLEMAN v. STATE.

In Banc. March 13, 1950.

No. 37423 (45 So. (2d) 240)

Drake & Gage, and **John H. Culkin,** for appellant.

**R. O. Arrington,** Assistant Attorney General, for appellee.

**Roberds, J.**

The indictment herein charged appellant with manslaughter in the killing of T. N. Tillson, Jr., through culpable negligence. Section 2232, Mississippi Code of 1942. He was convicted and sentenced to serve two years in the state penitentiary. Death resulted from an automobile accident.

Appellant contends (1) the evidence is insufficient to sustain his conviction under the rule heretofore announced by this court, but, if so, the lower court erred in (2) granting to the state, and (3) in refusing to grant to appellant, the hereinafter designated instructions. We will dispose of the contentions in the order stated.

In Smith v. State, 197 Miss. 802, 20 So. (2d) 701, 704, 161 A. L. R. 1, this court stated the rule by which guilt in such cases is to be tested. It there said ". . . the gist of the offense of involuntary manslaughter with a motor vehicle is criminal negligence, which must be wanton or reckless under circumstances implying danger to human life. . . . It must be negligence so wanton or reckless as to be incompatible with a proper regard for human life. . . . It must be shown that a homicide was not improbable under all the facts existing at the time, in order to sustain a conviction of criminal homicide attributable to negligence. . . . In other words, culpable negligence should be defined as the conscious and wanton or reckless disregard of the probabilities of fatal consequences to others as a result of the wilful creation of an unreasonable risk thereof." And finally, "In order then to give the term culpable negligence in the statute its proper setting instead of harking back to gross negligence, the term culpable negligence should be construed to mean a negligence of a

higher degree than that which in civil cases is held to be gross negligence, and must be a negligence of a degree so gross as to be tantamount to a wanton disregard of, or utter indifference to, the safety of human life, and that this shall be so clearly evidenced as to place it beyond every reasonable doubt.''

Do the facts of this case bring appellant within the foregoing definition of culpable negligence?

Twenty seven witnesses testified in this case. In addition, photographs were taken of the scene and of the physical conditions of the motor vehicles after the wreck. It would unduly lengthen this opinion, and we deem it unnecessary, to detail the testimony of these witnesses. It is sufficient to set forth the pertinent ultimate facts which the evidence amply justified the jury in finding. These facts are:

The accident occurred on Highway 61 about four miles north of Port Gibson, Mississippi. The weather was cloudy and rainy. Tillson, in a Pontiac automobile, was driving south alone. Appellant and one Kelly were traveling north in a ton and a half refrigerator Ford Truck. Appellant was driving. There was a head-on collision between the two vehicles. Tillson was instantly killed. This is a concrete highway. It extends generally north and south. Beginning a short distance north of the place of the accident it curves slightly to the left. At the point of collision and for some half mile or more south thereof the road is practically straight and level. Witnesses detected the odor of intoxicants upon appellant. He was driving at a rapid and unlawful speed. His truck was weaving from one side of the road to the other. His truck had gotten into the left, or west lane, of the highway. The left rear dual wheel of the truck was upon the dirt shoulder west of the pavement of the west lane. In other words, appellant was on the wrong side of the road —so much so that the right front of his truck hit the right front of the Pontiac. The force of the impact was

so great that he drove the Pontiac back north some thirty feet, and when the vehicles came to rest the fronts were tied together, the Pontiac having been turned about so that the front end thereof was in a northeasterly direction. All broken parts, oil and debris, tracks and skid marks showed the collision occurred entirely in the west lane. Tillson was driving in a careful manner and on his proper side of the highway. The great preponderance of the evidence sustains the foregoing conclusions. Certainly the jury was justified in so deciding. It is true appellant contended that Tillson was on the wrong side of the road, but his testimony is indefinite and unsatisfactory, and he is contradicted by a number of witnesses. For instance, before the trial he made a statement that Tillson as he approached appellant, had his hand out the left front window as if giving a signal he would go to the left. However, it developed, without dispute, that after the wreck this left window was entirely up and it was impossible for that to have been the fact. In view of that fact, appellant, when on the stand, changed his former statements and said Tillson was using his hand inside of his own car in such manner as to lead appellant to think he would turn to the left. On the stand he said, ''His hand seemed to be in his window . . . It wasn't a signal for a left turn . . . His hand was up like that''. We might add, as a matter of common sense, that had the two cars collided in the east lane in the manner as shown by their physical impact the Pontiac inevitably would have been knocked to the east side of the highway, whereas there is no substantial conflict that when they came to rest both were in the west lane thereof. In addition, it so happened that Mr. T. E. Beard, the deputy sheriff of Claiborne County, was driving south a short distance behind Mr. Tillson, and came upon the scene right after the accident occurred. He gave this account of an interview he then had with defendant. ''. . . I walked up to where the cars were tied up together, and I said to this darky who was standing there

—this one over here (indicating defendant)—I said, 'What's the matter,' and he said, 'We had a wreck', and about that time I seen a man's feet hanging out of the door, and I said "Is this man dead', and nobody said anything, and I walked over and felt his pulse and said 'If he is not dead he is just about dead', and I asked the darky how did they have such a wreck as that, and he said he was coming up the road and this man was coming down the road and he hit this man, and I said 'Who was at fault', and he said, 'I don't know; I was running and the man was running and I don't know', and I said 'What is your truck doing on this side of the road, on this man's side of the road', and he couldn't answer that question, and I said, 'Here is your track on the same side this other man was supposed to be driving on'. He had hit his car right in that side (indicating), and hit his car there, and he didn't answer.''

Kelly testified. His testimony is rather indefinite. It tended to prove the accident happened in the east lane. In one place he said the truck, after the accident, was in the east lane. He was asked what part of the truck, if any, "was on the left side"? He replied, "Well, a little bit of the body looked like it was setting over the line, a little bit of the back of the body." "Q. Where was the automobile? A. It was over in front of the truck. Q. Was it in the east lane or the west lane? A. In the west lane." However, he admitted having signed a statement prior to the trial in which he said that as the Tillson car approached, he, Kelly, "bent down behind the dash board to light my cigar", and when he looked up the collision had occurred.

██ Summed up, the great preponderance and weight of the testimony establishes the facts as above stated. These facts clearly sustain the guilt of defendant, as found by the jury, under the foregoing quoted rules of law applicable to such cases.

██ The trial court granted to the state the following instruction: "The court further instructs the jury

for the State, that criminal or culpable negligence is such gross negligence which under the circumstances then and there existing evidences a wanton, reckless and wilful disregard for human life, and the conscious and wanton and reckless disregard of the probabilities of fatal consequences to others as a direct result of the wilful creation of an unreasonable risk thereof; and, if you believe from all the evidence in this case, beyond a reasonable doubt, that at the time and place complained of, the Defendant, Louis Coleman, was then and there guilty of such culpable negilgence, and as a direct result thereof, he, the said Louis Coleman, drove the motor truck which he was operating from the right side of the center of public highway Number Sixty-one (61) in Claiborne County, State of Mississippi, on to the left side of said public highway aforesaid, and into the automobile in which the said L. N. Tillson, Jr., was riding and driving at the time, going in the opposite direction, and thereby collided with the said automobile driven then and there by the deceased, and thereby inflicted upon the deceased injuries from which he immediately died as a proximate and necessary result of said injuries, and if you so believe from all the evidence in this case, beyond a reasonable doubt, then the defendant, Louis Coleman, is guilty as charged in the indictment, and the jury should so find." Appellant says this instruction was condemned in McKinney v. State, 196 Miss. 826, 18 So. (2d) 446. The vice in the form of the instruction in the McKinney case was its recital as a fact that the accused, at the time of the accident, was undertaking to pass a truck "in a curve and going up a hill at the same time", questions of fact which were in dispute. The instruction under consideration in this case contains no such recital. There was no error in granting this instruction.

▪▪▪ Defendant requested, but was refused, the two-theory instruction. Appellant says that was reversible error. We direct attention to what is said by this court

as to that instruction in Simmons v. State, Miss., 44 So. (2d) 857, not yet reported in State Reports. The case at bar does not rest entirely upon circumstantial evidence, and, in addition, defendant obtained a number of instructions admonishing the jury that the defendant was presumed to be innocent, that the burden was upon the State to establish his guilt, and all the essential elements thereof, beyond a reasonable doubt. It was not error, certainly not reversible error, to refuse this instruction under the circumstances.

Affirmed.