STATE of North Dakota, Respondent,

v.

Lester TJADEN, Appellant.

No. 255.

Supreme Court of North Dakota.

March 7, 1955.

274

Hyland, Foster & Conmy, Bismarck, for appellant.

E. T. Christianson, Atty. Gen., T. H. H. Thoresen, Asst. Atty. Gen., Norman B. Jenson, State's Atty., Bismarck, for respondent.

GRIMSON, Judge.

On the evening of October 3, 1952, three carloads of people from Mandan, members of the Salvation Army, attended a meeting at Minot, North Dakota. After the meeting they left Minot about 10:30 P.M., and proceeded south towards Bismarck on U. S. Highway No. 83. When about a mile and a half north of Bismarck one of the cars, driven by John L. Phillips, became low on gasoline. At that time his was the middle car. He drove to the west side of the road, signaled the advance car, driven by Lt. Dave Tollerud, to return, and directed the car behind him, driven by Eugene Ellsworth, to drive up behind his car on the west side of the road. The state's witnesses claimed these cars were parked two or three feet west of the pavement. Lt. Dave Tollerud carefully noted their position. It was then arranged that Lt. Tollerud, should go into Bismarck for gasoline. In the meantime some of the people in the two remaining cars changed seats or got out and walked around. The time then was about one o'clock A.M. of October 4th.

That same evening Lester Tjaden was driving the evening passenger bus from Minot to Bismarck on Highway No. 83. As he approached Bismarck coming over a little rise he saw a car coming from the south and later noticed the tail lights of a car ahead of him. The patrolman testified that the rise was a half mile north of the place of collision. The defendant said it was a block or block and a half. He claims the lights of the north bound car blinded him so he did not see the tail lights anymore but that he was driving on the west side of the payment. He says that just as he passed the north bound car he saw the Ellsworth car right in front of him. He claims it was standing three or four feet in on the pavement. He had reduced his speed from 50 miles down to 45 miles per hour according to his testimony and applied his brakes. Immediately the collision occurred. The right front corner of the bus collided with the left rear of the Ellsworth car which was demolished. The Phillips car was side-swiped and

pushed across the ditch into the field. The bus came to a stop on the west shoulder of the highway some 100 feet, according to defendant's testimony, south of the point of collision. The right one-half of the front of the bus and the right front door were badly damaged.

Mr. Phillips had seen the headlights of the bus and had endeavored to warn those in the cars but they only had time to look through the back window as the bus crushed them. After the collision Mr. Phillips found that some members of his party were injured. He ran to the bus driver asking him to go into town for help and an ambulance. Amongst the injured in the Ellsworth car was one, Edward Geier. Soon an ambulance came and took him to a hospital where he was treated and was found to be seriously injured. A surgical operation was performed on him. He died on October 14, 1952 of pulmonary embolism.

Thereafter the State of North Dakota brought proceedings against defendant, Lester Tjaden, charging him with manslaughter in the first degree while engaged in the commission of a misdemeanor, to wit: reckless driving. The defendant was found guilty of manslaughter in the second degree, and sentenced to serve one year in the county jail. A motion for a new trial was made and denied. The defendant appealed from the judgment and the order denying the motion for a new trial. Many assignments of error were made both on the motion for a new trial and on appeal, and in the briefs these errors are classified by the defendant under six headings as follows:

1. Denial of the motion to quash the information.

2. Admission of evidence.

3. Misconduct of counsel * * * Prejudicial argument.

4. The insufficiency of the evidence to show that Geier was killed by the accused.

5. Error in the instructions of the court.

6. Failure to define culpable negligence and the insufficiency of the evidence to prove culpable negligence.

We will, therefore, consider only these subjects on appeal. All other assignments of error are deemed abandoned. Olson v. Armour & Co., 68 N.D. 272, 280 N.W. 200; Clark v. Josephson, N.D., 66 N.W.2d 539 and cases cited.

Prior to the opening of the trial the attorney for the defendant made a motion to quash the information on the ground that it did not state sufficient facts to constitute a public offense and did not substantially conform to the requirements of the code in that it did not state sufficient particulars to give the court and defendant notice of the offense intended to be charged. At the same time he filed a request for a bill of particulars. A bill of particulars was furnished. Then at the opening of the trial the motion to quash was renewed on the same grounds and the claim made that the bill of particulars was not sufficient. After argument the state furnished an amended bill of particulars. The motion to quash was again renewed and denied. This was again urged in a motion in arrest of judgment which was also denied.

Sec. 29–1110, NDRC 1943, provides that the information shall be valid and sufficient if it charges the offense for which the defendant is being prosecuted "by using the name given to the offense by statute and sufficient particulars to give the court and the defendant notice of the offense intended to be charged." The name of the defendant must be stated. Sec. 29–1114, NDRC 1943. Words and phrases are to be construed according to their usual acceptance, or according to their legal signification. Sec. 29–1129, NDRC 1943.

After stating the name of the defendant and that he committed the crime of manslaughter in the first degree by reckless driving the information set out almost in the language of the statute that the manslaughter was perpetrated by the commission of a misdemeanor, to wit, reckless driving. Then the amended bill of particulars added that the defendant "while so driving in a careless, heedless, and reckless manner did not properly observe other vehicles upon the said highway and failed to have his motor vehicle under proper and reasonable control, and thereby did run into and collide with another vehicle upon said highway and did then and there cause bodily injuries to one, Edward Geier, then and there an occupant of another vehicle, from which injuries said Edward Geier died."

■■ It is not necessary to state in an information the details of the acts which constitute the crime charged when the essential elements of the crime are set forth sufficiently to enable a person of common understanding to know what is meant or intended. State v. Egan, 47 S.D. 1, 195 N.W. 642. One test of the sufficiency of an information is whether it will protect the accused against a subsequent prosecution for the same offense.

"Under modern rules as to certainty, the indictment, information, or complaint is sufficient if it states specifically the elements of the offense with sufficient particularity to apprise accused of the crime charged and to enable him to prepare his defense and permit a conviction or acquittal to be pleaded in bar of a subsequent prosecution for the same offense." 42 C.J.S. Indictments and Informations, § 100, p. 979. See also 5, Berry, Automobiles, Sec. 5.347 p. 512; State v. Bolsinger, 221 Minn. 154, 21 N.W.2d 480, 491.

■ The information in the instant case meets these tests and the denial of the motion to quash was proper.

■ Defendant makes nine assignments of error upon the admission of evidence. All were on errors assigned on the overruling of objections to questions propounded by the attorneys for the state. The first two questions had reference to the situation existing right after the collision. The third was a question as to the condition of the weather and the visibility at the time of the

collision. Then the defendant objected to some questions on the examination of witness, Phillips, as to his reasons for stopping and as to the distance the bus traveled after the collision. Then there are some objections to the question as to what was done with the injured and their condition. Most of the questions had reference to the conditions existing immediately after the collision and were as to matters that were really a part of the res gestae. Then there is a series of questions asked the doctor as to whether the injuries were the cause of Mr. Geier's death. The doctor testified to his examination and treatment of the deceased. He was called to give his opinion based thereon. There was no error in allowing him to give his opinion. The questioning of the patrolman, who arrived immediately after the accident and had made a plat indicating some skid marks on the highway, was objected to as improper re-direct examination. Such examination is clearly within the discretion of the trial court. A question of the patrolman as to whether the occupants could comfortably sit in the automobile, standing on the shoulder of the highway, two feet west of the black top was objected to as improper hypothetical question. There was evidence on which that question could be based. The patrolman had had many years of experience and qualified as an expert.

■■ The rulings on all these questions were carefully reviewed by the court on the motion for a new trial. The court knew the situation existing at the time the questions were asked. He had the advantage of knowing all of the circumstances and incidents happening during the trial. The line of demarcation between evidence that is harmless and that which is prejudicial is often a very shadowy one, and may depend on what happens during the trial. Under the circumstances shown in the record it does not appear there were any prejudicial errors in the admission of testimony.

The defendant claims that portions of the argument for the state were prejudicial. The argument was taken down in shorthand by the reporter. The counsel for the defendant made no interruptions or objections during the argument. Afterwards and out of the presence of the jury the defendant took exception to certain portions of the argument and moved for a mistrial. The motion was denied. That is alleged as an error. Portions of the argument called to the court's attention differ somewhat from the portions set out in the brief and argued in this court. One assignment set forth in both was the statement of counsel in commenting on the death of Mr. Geier that, "The only way that a person dies is for the heart to stop. He doesn't die any other way. When the heart stops the person dies and of course something caused that heart to stop." Then he goes on and talked about embolism and internal bleeding. The quoted portion is what is particularly objected to as the testimony of the attorney. After all, what counsel stated was a matter of common knowledge and such matters cannot be said to be prejudicial.

Another objection made before the trial court and argued here is that counsel for the state made an appeal for sympathy. The portion objected to was made in the rebuttal argument after defendant's counsel had made his address to the jury. The assistant attorney general said defendant's counsel had "mentioned the mild mercy of Christmas." He then called attention to one family lacking that kind of a Christmas because of the negligence of the defendant and continued: "So I say as far as sympathy is concerned I think it is just as much on one end as on the other." Thus it appears that the "Christmas mercy" was first brought into the argument by defendant's counsel. The assistant attorney general's remarks bring out that "Christmas mercy" applied equally to both sides.

Defendant's counsel objects to a reference made by the assistant attorney general to the fatal happenings on our highways. In that connection, however, state's counsel said "This simply must not enter into a deliberation of this kind." The losses on the highways are matter of common knowledge and the remarks of counsel amount to a

warning to the jury not to take that into consideration.

Objection is made to the statement made by the assistant attorney general: "You have driven on the highway, so I have driven there also. We know that lights do not blind us at that distance." The last sentence at least is not proper but in view of the court's instructions cannot be said to be prejudicial.

Other objections made on the argument are that the assistant attorney general misstated testimony and made arguments not based on the testimony. Whether he had or not was clearly a matter for the jury on the instruction of the court afterwards given as follows:

"Statements of counsel, members of the jury, are not evidence. It is their right and privilege, and it is their duty, to state the evidence as they understand it, but if any statements are made by counsel in the heat of argument that are not supported by the evidence in the case introduced before you, you are to disregard such portion of their statements and are to consider only the evidence given by the witnesses on the stand before you in this case. Comment of counsel is not evidence in this case. You are the sole judges of the evidence."

The statements of counsel for the state may have been somewhat improper but when we consider in that connection the instructions of the court, we cannot say that those statements were a sufficient reason to cause a mistrial.

The granting of a mistrial is a serious matter. It cancels all proceedings up to that time and requires a new start to be made. That should not be done unless something has happened of such a serious nature as to cause manifest injustice by the continuation of the trial.

A mistrial should be granted only in the furtherance of justice. 53 Am.Jur. Trial, Sec. 967, p. 679; Heiler v. Goodman's Motor Express Van & Storage Co., 92 N.J.L. 415, 105 A. 233, 3 A.L.R. 336.

"The granting of a mistrial is an extreme remedy and voids all proceedings taken in the case up to that time. All the authorities agree that the practice should be resorted to only 'when further proceedings therewith would be productive of great hardship or manifest injustice'. Usborne v. Stephenson, 36 Or. 328, 58 P. 1103, 1104, 48 L.R.A. 432, 437. In such cases only where something has happened to make it apparent that justice will not be served by continuance of the trial is the granting of a motion for a mistrial the proper remedy." Hoffer v. Burd, 78 N.D. 278, 49 N.W.2d 282, 292.

In State v. Braathen, 77 N.D. 309, 43 N.W. 2d 202, 206, we held: "The declaration by the trial court of a mistrial is a stringent step to be taken by the court upon the development of some fact or occurrence that renders further proceedings nugatory."

The trial judge has great discretion in the matter of granting such a motion. He had heard the argument and had seen its effect upon the jury. His decision will not be reversed unless a manifest injustice appears. That does not appear to be the situation in the case at bar.

The defense contends that it has not been established that Geier was killed by the actions of the defendant. That question was raised by motions for "dismissal" and for a "directed verdict of acquittal" made at the close of the testimony. On his motion for new trial and on appeal he included that as one of the specifications of error. In support of that point defendant cites Sec. 12–2728, NDRC 1943, which provides that "No person can be convicted of murder, manslaughter, nor of aiding suicide, unless the death of the person alleged to have been killed and the fact of the killing by the accused as alleged, are established as independent facts, the former by direct evidence and the latter beyond a reasonable doubt." He contends the state's proof is not sufficient under this statute.

In State v. Sogge, 36 N.D. 262, 161 N.W. 1022, the history of this statute is set forth. Originally there was no distinction between the proof required for the killing and the fact of the killing by the accused. Penal Code Territory of Dakota 1877, Sec. 239. By 1895 this had been changed to read as it now does, Sec. 7055, RCND 1895. Judge Christianson in that case construes this statute as requiring the death to be proven by direct evidence while the act of the defendant in causing it may be proved by either direct evidence or by circumstantial evidence which establishes that fact beyond a reasonable doubt.

 In State v. Gibson, 69 N.D. 70, 284 N.W. 209, 212, it is held:

"(1) It is only the fact of death that must be established by direct proof, and (2) The fact of the killing by the accused as alleged must be established beyond a reasonable doubt, but may be established by any competent evidence either direct or circumstantial, including a confession or admission by the accused."

 In the case at bar the evidence directly establishes that Edward Geier received injuries in the collision, his transportation to the hospital, his treatment by the doctor and his death. We are satisfied that his death is established by direct proof as required.

Defendant, however, contends that there is not sufficient proof to find the defendant guilty of causing Geier's death beyond a reasonable doubt. He bases that on the testimony of Dr. Owens, who attended Mr. Geier and who testified on cross-examination: "Q. As I understand your testimony, Doctor, you have told us you cannot be sure that this embolism resulted from the abdominal injury? A. That is right." He was also asked: "Q. But, of course, you do not know for sure whether it did develop from that, do you? A. No, I couldn't say positively." The doctor, however, testified that when he was first called on the early morning of October 4, 1952, to attend Mr.

Geier in the hospital he found him "in shock from a recent accident." He described the injuries Mr. Geier had received which were found to be internal as well as external. Surgery was found to be absolutely necessary and was done the next morning. Considerable internal bleeding had occurred. Because of the condition found, six feet of the lower bowel and the colon were removed and other internal repairs made. A clamp was used to hold the bowel in place. After that Mr. Geier was delirious. That clamp later became displaced. Mr. Geier was put in an oxygen tent. He died suddenly on the evening of October 14 of pulmonary embolism. The Doctor explains that pulmonary embolism is caused by a blood clot suddenly loosened, pumped by the heart into the large blood vessel of the lung and shutting off the blood supply to the lung. The doctor testified that "It is generally known that pulmonary embolism, or blood clots, occur not too infrequently following injuries of this type or following operations * * *. I would say that the primary cause of death was a pulmonary embolism brought on or aggravated by the fact that he was in bed on account of injuries that he had sustained, with this possibility that this laceration in the abdomen might have been the source of the embolism that went to the lung."

 The doctor's testimony disclosed no other source of the embolism. The testimony shows an unbroken chain of events commencing with the injuries received in the collision and ending with Mr. Geier's death. We are satisfied that the jury could find beyond a reasonable doubt that the injuries caused by the collision were the cause of Mr. Geier's death.

Defendant's next claim of error is that under the court's instructions the jury could find the defendant guilty on proof of ordinary negligence. He cites the court's instructions on reckless driving. The court duly instructed the jury that homicide is manslaughter in the first degree when perpetrated without a design to effect death by a person while engaged in the commis-

sion of a misdemeanor. The misdemeanor alleged in this case was reckless driving. On that the court charged the jury as follows:

"Any person shall be guilty of reckless driving if he drives a vehicle upon a highway:

(1) Carelessly and heedlessly in wilful or wanton disregard of the rights or safety of others;

(2) Without due caution and circumspection; or

(3) At a speed or in a manner to endanger or likely to endanger any person or the property of another.

"You will note that reckless driving may be committed in any one of these three ways."

According to that charge a jury could find the defendant guilty of manslaughter in the first degree if it found that he was driving a vehicle upon the highway "without due caution and circumspection." Defendant contends that the phrase "without due caution and circumspection" as ordinarily construed amounts to nothing more than ordinary negligence and as such does not amount to a degree of negligence sufficient to find one guilty of reckless driving. In Ex parte Chernosky, Tex.Cr.App., 217 S.W. 2d 673, 674, it is held: "The words 'without due caution or circumspection,' standing alone, import nothing more or less than what is sometimes referred to as ordinary negligence, which is a failure to exercise that degree of care that a person of ordinary prudence would exercise under the same or similar circumstances."

The use of that phrase in the criminal statute has been construed in a number of cases and it has been generally held that in order to constitute a crime something more than what is expressed in that phrase as ordinarily understood must be stated.

It is generally held that there must be a higher degree of negligence than is required to establish negligent default in a civil action. It must include some element showing a reckless disregard for the safety of others. The term generally used is "criminal negligence" which cannot be implied from the use of the phrase "without due caution and circumspection" alone. People v. Hurley, 13 Cal.App.2d 208, 56 P.2d 978; State v. Bolsinger, 221 Minn. 154, 21 N.W.2d 480; Phillips v. State, 204 Ark. 205, 161 S.W.2d 747; People v. Seiler, 57 Cal.App. 195, 207 P. 396; Croker v. State, 57 Ga.App. 895, 197 S.E. 92. Neesen v. Armstrong, 213 Iowa 378, 239 N.W. 56, 8 Blashfield Cyc. of Automobile, Sec. 790, p. 927.

The history of our statute, Sec. 39-0803, NDRC 1943, shows that there was originally no intent to provide three ways in which reckless driving could be committed. This section was first enacted as Sec. 3 of Highway Traffic Regulations, Chapter 162, S.L. 1927, p. 247. It was never amended or changed until the codification of 1943. Then the codifiers re-arranged the punctuation and language somewhat. We state below, side by side, that section as originally enacted in 1927, and as codified in 1943.

Sec. 3, Chap. 162, S.L.1927

"Any person who drives any vehicle upon a highway carelessly and heedlessly in wilful or wanton disregard of the rights or safety of others, or without due caution and circumspection and at a speed or in a manner so as to endanger or be likely to endanger any person or property, shall be guilty of reckless driving, and upon conviction shall be punished as provided in Section 63 of this Act." Chap. 162, S.L.1927, p. 247.

Sec. 39-0803, NDRC 1943

"Any person shall be guilty of reckless driving if he drives a vehicle upon a highway:

"1. Carelessly and heedlessly in wilful or wanton disregard of the rights or safety of others;

"2. Without due caution and circumspection; or

"3. At a speed or in a manner to endanger or likely to endanger any person." Sec. 39-0803 NDRC 1943.

The revisor's note to Sec. 39–0803, NDRC 1943, in the report of the Code Revision Commission to the 28th legislative assembly reads: "This section is * * * revised in form for clarity without changing the meaning."

By comparing these two sections it is clear that the only change made is in the punctuation and re-arrangement of the language of the section. The intent of the Code Commission not to change the meaning of the statute is borne out by the comparison as well as by the revisor's note.

■ This court has repeatedly held that changes in punctuation and phraseology in codification do not affect the original meaning of the law. In State ex rel. Kositzky v. Prater, 48 N.D. 1240, 1248, 189 N.W. 334, 337, this court says:

"The general presumption obtains that the codifiers did not intend to change the law as it formerly existed. Braun v. State, 40 Tex.Cr.R. 236, 49 S.W. 620, 622; U. S. v. Ryder, 110 U.S. 740, 4 S.Ct. 196, 201, 28 L.Ed. 308. Changes made in the revision of statutes by alteration of the phraseology will not be regarded as altering the law unless there is a clear intent so to do. (Citing cases.) In ascertaining the intention of language used in a code revision, reference may be had to the prior statute for the·purpose of ascertaining the legislative intent. Becklin v. Becklin, supra [99 Minn. 307, 109 N.W. 243]; Stevens v. Bridge Co., 115 Me. 402, 99 A. 94."

This holding has been confirmed by this court in Eisenzimmer v. Bell, 75 N.D. 733, 32 N.W.2d 891; State ex rel. Johnson v. Broderick, 75 N.D. 340, 27 N.W.2d 849, 864; Chester v. Einarson, 76 N.D. 205, 34 N.W.2d 418, 35 N.W.2d 137.

■ From this comparison of the original law and the codification thereof, it is clear that there was no intention to set out three separate ways of committing reckless driving. Under the original law a driver commits reckless driving either by driving "carelessly and heedlessly in wilful or wanton disregard of the rights or safety of others," or by driving "without due caution and circumspection and at a speed or in a manner so as to endanger or be likely to endanger any person or property." Driving only. "without due caution and circumspection" was not intended to set out a separate way of committing reckless driving. The original intent of Section 3, Chapter 162, S.L. 1937, still controls Sec. 39–0803, NDRC 1943.

■ We are, therefore, constrained to hold that the instruction of the court that any one of the three ways enumerated in Sec. 39–0803, NDRC 1943 would constitute reckless driving was erroneous.

■ However, under the circumstances of this case such error was not prejudicial. The jury did not find the defendant guilty of manslaughter in the first degree and, therefore, did not hold him guilty of reckless driving on which the erroneous instruction was given. Instead the jury found the defendant guilty of manslaughter in the second degree. Reckless driving is not included in a conviction on second degree of manslaughter. Defendant could not be prejudiced by an erroneous instruction on first degree manslaughter when the jury did not find him guilty thereof. National Bank v. Lemke, 3 N.D. 154, 159, 54 N.W. 919; Worlitz v. Miller, 48 N.D. 335, 340, 184 N.W. 806.

The defendant's final claim is that the court failed to define "culpable negligence" which is necessary in order·for the jury to find the defendant guilty of manslaughter in the second degree. Sec. 12–2719, NDRC 1943.

■ After stating the material allegations of the complaint which "must be proven beyond a reasonable doubt," the court says: "It will be sufficient in that respect·if at this time it is proven beyond a reasonable doubt that the death of Edward Geier was brought about by the defendant driving said passenger bus in a culpable, negligent and reckless manner". Later

the court gave this definition of culpable negligence:

> " 'Culpable negligence' has reference to blameable, willful, wanton, criminal lack of care and diligence under all of the surrounding circumstances and conditions known to the person to be charged therewith and implies an indifference and *wanton disregard of consecuences and a reckless indifference of the lives and safety of others."* (Emphasis supplied.)

The courts in defining culpable negligence have generally held that the essentials thereof are blameable and wanton lack of care evidenced in a reckless indifference to the safety and rights of others. In the case of State v. Gulke, 76 N.D. 653, 38 N.W.2d 722, 723, this court held:

> "The term culpable negligence as used in Section 12–2719, RCND 1943, defining manslaughter in the second degree as applied to the operation of a motor vehicle, implies a total lack of care which is properly described as being in a reckless and heedless manner with utter disregard for the lives and limbs of persons upon the highway."

In Coleman v. State, 208 Miss. 612, 45 So.2d 240, it is held that in a statute providing "that the killing of a human being through culpable negligence shall be manslaughter, 'culpable negligence' should be defined as the conscious and wanton or reckless disregard of the probabilities of fatal consequence to others." In State v. Cope, 204 N.C. 28, 167 S.E. 456, 458, the court said: "Culpable negligence is such recklessness or carelessness, proximately resulting in injury or death, as imports a thoughtless disregard of consequences or a heedless indifference to the safety and rights of others." See also Smith v. State, 197 Miss. 802, 20 So.2d 701, 161 A.L.R. 1; State v. Melton, 326 Mo. 962, 33 S.W.2d 894; Cannon v. State, 91 Fla. 214, 107 So. 360; State v. Bates, 65 S.D. 105, 271 N.W. 765; Nail v. State, 33 Okl.Cr. 100, 242 P. 270, 8 Blashfield Cyclopedia of Automobile Law and Practice, Permanent Edition, Sec. 5500,

p. 560, 5 Berry, Automobiles, Sec. 5.364, p. 539.

▮▮▮ Measured by these definitions the instruction of the court, above quoted, is sufficient.

In connection with the attack on the definition of culpable negligence it is argued on behalf of the defendant that the evidence is insufficient to establish culpable negligence on his part.

Oklahoma has a statute identical with our Sec. 12–2719, NDRC 1943, defining manslaughter in the second degree. In Nail v. State, 33 Okl.Cr. 100, 242 P. 272, the court holds that negligence to be a crime must be culpable. The court says:

> "By no means every instance where one person is injured or killed by a vehicle driven by another do the circumstances constitute a crime. There must be negligence rising to the degree of criminal or culpable negligence. The culpability of a defendant is a question of fact for the jury, and the test is: Do the acts charged as criminal show a degree of carelessness amounting to a culpable disregard of the rights and safety of others, and did said acts cause the death of deceased?"

The court then holds that "The driving of an automobile upon the highway, with a degree of carelessness amounting to a culpable disregard of the rights and safety of others, and thereby causing the death of another, establishes the crime of manslaughter in the second degree." In that case the defendant drove into the rear of a car, driven off the pavement except for 18 inches, while the deceased was replacing a tire on the carrier. The court says:

> "Taking the evidence here which tends to sustain the verdict of the jury that the defendant in driving her car against the deceased was guilty of culpable negligence, it will be seen that the jury might find that the defendant upon a highway, where there were various persons traveling in both directions, and where a reasonable person must

expect frequently to overtake or pass other vehicles, drove at a high rate of speed, without having her car under control, and without watching the highway for other travelers with whom she might have collision, and without any obstruction to her view, drove against the deceased who had stopped at the edge of the highway with his car in plain sight, and caused his death."

The court held that this amounted to culpable negligence and sustained a verdict of manslaughter in the second degree.

In the case of Wilson v. State, 70 Okl.Cr. 262, 105 P.2d 789, 792, one Daniels was driving west on U. S. Highway No. 66, on the right-hand side of the road near the north side of the pavement at about 30 or 35 miles an hour after 10:00 o'clock P.M. His tail lights were burning. A car passed him going east. Just then one, Wilson, driving west at 40 or 50 miles an hour, failing to observe the east bound car in time and not having her car under proper control, struck the left rear wheel of the Daniel's car which caught fire and burned. The court said:

"Defendant, (Wilson) according to the evidence, was driving at a fast rate of speed, estimated up to fifty miles an hour. She could see the lights of the (east bound) car * * * coming towards her. * * * The defendant, seeing her perilous position, and not having the car under proper control, drove into the back end of the Daniels car, and the child, Raymond Daniels, was killed, as shown by the evidence."

The court held these facts constituted culpable negligence and affirmed the verdict of second degree manslaughter.

In the case of State v. Ritter, Mo., 2 S.W. 2d 753, 754, the defendant, driving south at a speed of 25 miles or more attempted to pass a row of cars ahead of him on a winding road, 24 feet wide, which at the time was wet and slippery. A Cadillac car came in view proceeding slowly north on the far east side of the road. In trying to drive between the row of cars and the Cadillac defendant's car skidded and swerved into the north bound Cadillac as a result of which a woman in that car was killed. The court says:

"With a hard surface of only 24 feet to accommodate vehicles, and without sufficient room to safely pass between machines meeting and going in opposite directions, upon a wet and slippery surface, and upon a winding road curving in angles, defendant drove on the left side of the road; thus negligently taking the chance of meeting an automobile coming in the opposite direction with fatal results. * * * We think the evidence prima facie shows defendant guilty of culpable negligence; thus rendering defendant's guilt a question for the jury. State v. Scheufler, Mo. Sup., 285 S.W. 419; State v. Renfro, Mo.Sup., 279 S.W. 702."

In Jaquith v. Worden, 73 Wash. 349, 132 P. 33, 37, 48 L.R.A.,N.S., 827, the defendant's car struck an unlighted machine standing in the street, knocking it against the plaintiff and injuring her. The defendant testified that he was so blinded by the headlight of an approaching streetcar that he did not see the machine until he struck it. It was held that he was guilty of "the most pronounced" negligence. The court said: "He was proceeding in *utter disregard of the presence of other travelers or objects ahead of him. Had he been without eyes or had he closed them, he would have been in no worse position.* To proceed at all in the face of those conditions was at his peril." (Emphasis supplied.) See also Mathers v. Botsford, 86 Fla. 40, 97 So. 282, 32 A.L.R. 881.

The jury had a right to believe the evidence in the instant case most favorable to the verdict. According to that evidence the Ellsworth car was located on the graveled shoulder of Highway No. 83, about three feet west of the pavement, facing south. The Phillips car was a few feet straight ahead of the Ellsworth car. The front and rear lights of both cars were burning. The defendant was driving the evening passenger bus leaving Bismarck for Minot at 7:10

P.M. He was, according to schedule to arrive back in Bismarck at 12:50 A.M. but was a little late. On coming south about 1:00 A.M. over a little rise in the highway a half mile north of where the Ellsworth car was located he saw a car coming north. A little later he saw the tail lights of the Ellsworth car. He said it was hard to tell whether the lights were moving or not. The north bound car had to pass the Ellsworth car before he would meet it. He claimed the lights on this north bound car blinded him so that he could not see the tail lights anymore. Without ascertaining where the Ellsworth car was or whether anybody was on the side of the road, the defendant on the approach of the north bound car willfully and blindly turned to his right so far that his right wheels were out on the graveled shoulder of the road. He had been going 50 or more miles an hour but on turning out reduced his speed to 45 miles an hour. Just as the north bound car had passed him he saw the Ellsworth car right in front of the bus. He was then going too fast and did not have sufficient control of the bus to stop, but clamped on his brakes. The fatal collision occurred. The force of the collision was so great that the right front corner of the bus crashed into the left rear of the Ellsworth car, tearing out the left side of that car. The deceased was sitting in the driver's seat. The next morning the patrolmen found rubber skid marks of dual wheels three feet, 9 inches in on the west side of the pavement at the place where the collision occurred.

The evidence thus presents the defendant, driving 50 miles per hour or over, seeing tail lights in front of him, blinded by glaring lights of a north bound car, turning willfully out on the shoulder to pass it, reducing his speed only five miles and without ascertaining that the way ahead was clear. The pavement was 23 feet wide. There was no evidence that the north bound car was not properly on its east side of the road. Defendant had plenty of room to pass that car without turning off on the shoulder and if he had done so there would have been no collision.

The jury could find that the evidence thus showed a total lack of care in not determining whether the lights of the Ellsworth car were moving, recklessness and heedlessness in turning out on the graveled shoulder without knowing that the road ahead was clear, and utter disregard of lives of persons that might be on the highway and particularly those who might be on the shoulder in a normal place of safety.

■ There was sufficient evidence to warrant the jury in finding the defendant guilty of culpable negligence and to sustain a verdict of second degree manslaughter.

The judgment of the district court is affirmed.

GRIMSON, JOHNSON and SATHRE, JJ., concur.

MORRIS, Judge (concurring).

I concur in the opinion prepared by Judge Grimson but, because I believe unnecessary emphasis has been placed upon the definition of culpable negligence, I make these observations:

"Homicide is the destruction of the life of one human being by the act, agency, procurement, or culpable omission of another." Section 12–2701, NDRC 1943.

Manslaughter in the first degree results when a homicide is "perpetrated without a design to effect death by a person while engaged in the commission of a misdemeanor; * * *." Section 12–2717, NDRC 1943. These quotations from the statute lead inescapably to the conclusion that the accidental killing of a human being by the driver of a vehicle engaged in the commission of the crime of reckless driving is manslaughter in the first degree.

In this case the defendant was charged with manslaughter in the first degree. However, the jury found him guilty of manslaughter in the second degree. This is equivalent to finding that the killing

charged in the information did not occur while the defendant was engaged in any of the acts defined by the statute as reckless driving but that it did occur in a manner falling within the definition of manslaughter in the second degree, which is defined by Section 12–2719, NDRC 1943 as follows:

"Every killing of one human being by the act, agency, procurement, or culpable negligence of another which, under the provisions of this chapter, is not murder nor manslaughter in the first degree, nor excusable nor justifiable homicide, is manslaughter in the second degree."

The Supreme Court of South Dakota, in construing and applying an identical statute, says:

"The language of the statute shows clearly that culpable negligence is only one of many unlawful acts which may constitute manslaughter in the second degree.

"Appellant cites the case of State v. Bates, 65 S.D. 105, 271 N.W. 765, wherein the court defined culpable negligence and decided that when culpable negligence is proved the act may amount to manslaughter in the second degree, but there is nothing in the opinion which indicates that manslaughter in the second degree, as a public offense, depends exclusively on culpable negligence." State v. Painter, 70 S.D. 277, 17 N.W.2d 12, 13.

Section 12–2703, NDRC 1943 provides that homicide is excusable "When committed by accident and misfortune in lawfully correcting a child or in doing any other lawful act, by lawful means, with usual and ordinary caution and without any unlawful intent; * * *." The trial court instructed the jury in the terms of Sections 12–2719

and 12–2703. These instructions were proper. The acts of the defendant in operating the bus caused the death of Edward Geier. I believe that under the evidence in this case the defendant's conduct may have been neither wanton nor willful. On the other hand, the evidence warrants the jury in finding that his conduct was neither justifiable nor excusable and the defendant was therefore guilty of manslaughter in the second degree.

BURKE, Chief Justice (concurring).

I concur in the result in this case although I do not believe the evidence is sufficient to sustain a finding of culpable negligence as it is defined in the opinion of the majority. After a careful consideration of the applicable statutes, I have come to the conclusion that proof of ordinary negligence which causes the death of a human being is sufficient to sustain a conviction of manslaughter in the second degree.

Under Section 12–2715, NDRC 1943, "Homicide, not excusable or justifiable, but perpetrated in a manner not constituting murder, is manslaughter." Under Section 12–2719, NDRC 1943, homicide which is neither "murder nor manslaughter in the first degree, nor excusable nor justifiable homicide, is manslaughter in the second degree." Under Section 12–2703, NDRC 1943, a homicide is excusable, "When committed by accident and misfortune * * * by lawful means, with usual and ordinary caution * * *". It follows that a homicide committed accidently but when acting without ordinary caution is not excusable homicide. Lack of ordinary caution is ordinary negligence. I am compelled to the conclusion therefore that a homicide caused by ordinary negligence, since it is not excusable under the statute, is manslaughter in the second degree.