[File No. 6518.]

AXEL OLSON, Respondent, v. ARMOUR & COMPANY, a Corporation, Appellant.

(280 N. W. 200.)

Opinion filed March 29, 1938.

*Fuller & Powers,* for appellant.

*Goodwin T. Westlund* and *Conmy & Conmy,* for respondent.

274

BURR, J. The plaintiff brings this action to recover damages which he claims he sustained from March 5, 1934 to the time of trial in 1937 as lessee of a farm located on the banks of the Sheyenne River, and alleges that the defendant in operating a slaughtering establishment and packing plant along the river so polluted the stream that he was unable to use the water and his "use and enjoyment of said farm and his leasehold to said farm has been materially damaged and interfered with because of the pollution and fouling of the waters by defendant, and the foul and noxious odors created by said pollution, all to his damage since December 1, 1933, to date, in the sum of Three Thousand ($3,000.00) Dollars."

The answer, with its amendment, states that, while the defendant company had a right to make a reasonable use of the river in the operation of its packing plant so long as it did not cause material injury to others, nevertheless, the defendant "admits for the purpose of this trial that defendant has used the stream for the purpose of releasing packing house waste therein to an extent or degree greater than defendant reasonably might use the same, thereby contributing

to the pollution of the water, and that defendant is liable to the plaintiff for such real and actual injury, if any, as directly may have resulted from the acts of the defendant causing such pollution."

When the plaintiff rested at the close of his case the defendant stated to the court: "In our pleading we concede that our use of the stream has passed beyond the point where we lawfully could use it, and that we are liable, that we should pay the actual, the real damage, in a properly adjusted measure, for which we are responsible to this plaintiff. So that it leaves only the question of the computation of what that just measure of damages is. And under the conditions as they are in the case, we consider that no proof on that subject will illuminate or aid the jury. For that reason, the defendant also rests."

The case therefore was submitted to the jury upon the testimony furnished by the plaintiff; a verdict was returned in favor of the plaintiff for $2000.00; judgment was entered thereon; and the defendant moved for a new trial, specifying as grounds certain errors in law occurring at the trial and excepted to by the defendant and the insufficiency of the evidence to sustain the verdict. The court denied this motion and defendant appeals from the judgment and from the order overruling the motion for a new trial.

The appellant, in its notice of appeal, says the "said appeal will be based upon a statement or specification of errors at law and insufficiency of evidence, a draft of which is hereto attached and made a part of this notice."

These specifications divide themselves into two classes, one dealing with portions of the instructions to the jury and the other with the insufficiency of the evidence. With reference to the latter the appellant says that the "evidence is insufficient to support the verdict and decision in this:

"That there is no showing that plaintiff by reason of his right of occupancy acquired an interest in the waters of the stream sufficient to support recovery of damages for the acts of defendant, in wrongfully using or occupying the same; and no proof of what would have been the condition, or quality, or fitness of water at time from which damages are claimed, if defendant were not then releasing its waste into the stream."

At the same time there were three other similar cases pending and

tried — Weir v. Armour & Co. post, 281, 280 N. W. 204; Paseka v. Armour & Co. post, 283, 280 N. W. 205, and Haugen v. Armour & Co. post, 282, 280 N. W. 204 — wherein the plaintiffs recovered damages for pollution of this stream; and the four appeals are on the same identical grounds.

Appellant divides his "Statement and Brief" in this Olson Case into two parts. Part I sets forth the pleadings, the result, the specifications of error, and the nature of the appeal. The same treatment is afforded the companion cases.

Part II in this case is concerned with the defendant's argument, and this argument applies to the companion cases without repetition. As appellant says, the Olson Case is typical of the four cases.

In the alleged errors of law occurring at the trial two deal with portions of the instructions to the jury said to be erroneous. The portions are set forth in the specifications of error; but nowhere are these specifications argued in the appellant's brief, and, therefore, they are deemed abandoned and will not be considered on this appeal. Foster County Implement Co. v. Smith, 17 N. D. 178, 115 N. W. 663; Pendroy v. Great Northern R. Co. 17 N. D. 433, 117 N. W. 531; Kennedy v. State Bank, 22 N. D. 69, 132 N. W. 657; Starke v. Wannemacher, 32 N. D. 617, 156 N. W. 494; Moen v. Moen, 65 N. D. 40, 256 N. W. 254.

The specifications of error dealing with rulings and the admission of evidence are numerous, but appellant summarizes them into two points.

Appellant says: "(1) Evidence was offered by plaintiff and admitted over the objections of defendant to the effect that, prior to the period for which damages are alleged, farmers along the stream made protests and objections to defendant in 1927, and thereafter, against its pollution of the water; which evidence was connected with other evidence that, notwithstanding such objections, the defendant continued discharging its waste into the stream and causing the damage of pollution."

Appellant says this evidence created the "clear inference that defendant's conduct had been arbitrary, wanton and oppressive," and therefore the jury must have had in mind punitive damages.

"(2) Over the objections of defendant, evidence was offered and received to the effect that, prior to the year 1925 when defendant com-

menced its packing house operations, the water was clear and pure and fresh; the water and the ice could be used for human consumption; there were fish in the stream; it was used for bathing purposes; and that the stream was clear with a hard bottom."

To understand the matter better it is necessary to state that the Weir case was tried first and there this same character of evidence was offered by the plaintiff. Before ruling thereon the court required plaintiff to state the purpose, and the plaintiff stated the purpose of the offering of testimony was to forestall the claim of acquiescence on the part of the defendant and that those interested in the matter had not waived their rights. It is clear that the same purpose and the same objection apply in this particular case.

Appellant's first point is: "In an Action for Damages Sustained by Plaintiff as Occupant of Farm Land on a Stream for the Admitted Pollution of the Waters by Defendant Where the Single Question for Determination Under the Pleading Is the Amount of Actual Damage Sustained by Plaintiff and Where There Are No Allegations On Which Recovery of Punitive Damage Can Be Based, Evidence of Unheeded Protests and Objections Made to Defendant Against Such Pollution by Farm Occupants Along the Stream Is Clearly Irrelevant, as Not Tending to Prove or Disprove Any Fact in Issue, and Prejudicial to Defendant."

While some testimony was introduced showing the condition of the river for years back, the plaintiff limited the condition described to the period immediately preceding the commencement of operations by the defendant and then proceeded to show the change in conditions caused by the defendant. Later we refer to the subject of exemplary damages.

The second point raises the question that the showing of such condition "Nine Years Before the Period of Time for Which Recovery Is Sought by Plaintiff Is Remote and Irrelevant Where Such Evidence Is Not Fully Connected with the Period for Which Damage Is Alleged by Showing That the Stream Would Then Be Similarly Pure and Wholesome if Defendant Were Not Then Polluting the Water."

Appellant says that such testimony was inadmissible as being totally irrelevant. We must not overlook the fact that the record in the Weir case shows specific protest made during the time of the tenancy, for

the plaintiff in this case holds under the tenancy of Weir. It is quite conceivable that if the tenant went onto the premises knowing the condition and remained there for years without any protest whatever, without making any objection to those in charge, reasonable men might consider that he acquiesced in this situation or that the situation was not as bad as he described it. However, we do not need to determine whether the evidence was in fact irrelevant. Even if inadmissible, no prejudice has been shown. The only suggestion made by the appellant is that such testimony may have had the effect of inflaming the jury and influencing it to give exemplary damages. The plaintiff did not request instructions against exemplary damages. No exemplary damages were demanded; no suggestion was made that they were recoverable; the plaintiff, in offering the testimony, expressly limited it to the question of acquiescence; the defendant offered no testimony; the court in its instructions limited the instructions to the jury to the real and actual damages caused by the defendant itself during the period of the tenancy; in its motion for new trial the defendant made no claim of a right to a new trial on the ground of excessive damages given under the influence of passion or prejudice. In view of this there is no basis for even a suggestion of the possibility that the jury had in mind punitive damages.

This evidence was not offered for the purpose of establishing a right to exemplary damages. Such damages were not claimed, no reference was made to them, the court did not instruct with reference thereto. Appellant asked for no instruction warning the jury not to consider that feature — this element was not in the lawsuit — and appellant has not pointed out anything with reference to the amount allowed which would indicate exemplary damages were considered.

It is not asserted by the appellant that the charge was not sufficiently specific. No request for further or more detailed instructions was made; appellant did not ask that the evidence be stricken from the record nor that the jury be cautioned not to consider it, nor did it ask for any limitation upon the consideration.

Appellant, in its brief, says, "The defendant, we repeat, admitted its liability to plaintiff for whatever real and actual injury and damage plaintiff had sustained and was legally entitled to recover. Nothing was left for decision as a matter of fact but the amount of that damage."

Thus, the question submitted to the jury was the amount of such "real and actual injury and damage."

It is clear there was an intolerable situation, continuing during the whole period of the lease, for which the plaintiff was seeking recovery. The foul odors generated, the condition of the water, and total inability to use it were all established and appellant did not seek to controvert it.

Its answer admits that if any damages were suffered it would be liable for such real and actual damage as directly may have resulted from the acts of the defendant causing such pollution. Appellant asked the court to instruct the jury that "The correct measure of plaintiff's damage is a diminution or the amount that the value of the use of the premises occupied by plaintiff was reduced by the acts of the defendant in polluting the stream."

It is true this request was refused, but the answer, and the request, and the statement of the issue as made by appellant show the theory held by the defendant on the trial of the case. The court restricted the damages to the period of the tenancy, eliminated the pollution caused from other sources, and thus favored the defendant by limiting the scope of its admission so far as time is concerned.

There can be no mathematical rule laid down for the measurement of damage caused by foul odors and other injuries shown, nor does the appellant suggest any. It must be clear that the amount to be allowed is largely in the discretion of the jury. Where no exemplary damages are indicated, and where it is not shown or even asserted that excessive damages were given under the influence of passion or prejudice, where all assignments dealing with the charge to the jury have been abandoned, and no prejudicial error has been shown, the judgment must be affirmed.

CHRISTIANSON, Ch. J., and NUESSLE, J., concur.

MORRIS, J. (dissenting). The plaintiff became a tenant upon a farm located upon the Sheyenne River March 5, 1934. He seeks actual or compensatory damages for injury to his leasehold resulting from pollution of the river by the defendant. He does not seek exemplary or punitive damages, and it is doubtful that he would be entitled to such damages under the facts in this case even if pleaded. The only ques-

tion for the jury to decide was the amount of money which would compensate the plaintiff for the injury which he received at the hands of the defendant. Over the objections of the defendant, the plaintiff was permitted to introduce testimony that in 1927 a committee of farmers living along the river, of which the witness was a member, protested to the officials of the defendant company against the pollution of the stream, and that protests were again made in 1931 or 1932.

The majority opinion justified the admission of this testimony upon the ground that the defendant might have sought to show that the plaintiff acquiesced in the pollution of the stream and that the testimony was admitted in anticipation of a possible defense of acquiescence. Acquiescence was not pleaded as a defense. Upon the record as it existed at the time this evidence was introduced, it was wholly irrelevant to any issue presented by either the testimony or the pleadings. The mere fact that the plaintiff may have thought that the defendant might seek to introduce testimony of acquiescence and thus make evidence of protest admissible in rebuttal, did not make this evidence admissible as part of the plaintiff's case in chief. The evidence in question was such as to tend to establish a wanton disregard by the defendant of the rights of people living along the Sheyenne River as far back as 1927. The verdict is substantial, and the amount thereof may have been influenced by the irrelevant testimony above referred to. The admission of this evidence was error and not a mere matter of order of proof.

The court instructed the jury upon the general theory of compensatory damages, but those instructions cannot be held to amount to a direction to disregard the testimony concerning the protest, and no specific instruction to so disregard it was given. It was left with the jury for consideration. It cannot be said that it did not enter into their deliberations and affect the amount of the verdict which they rendered.

The plaintiff took the farm which he leased including rights in the stream with the pollution that was actually in the water at the time his lease began. The fact that the defendant had prior to the inception of the lease dumped packing house waste into the river thereby creating a polluted condition of the water, and. that such effect may have continued for a time after the plaintiff came into possession of the premises gave him no right to damages. If there had been no further

or additional pollution of the stream after the tenancy began, the plaintiff could recover no damages, even though the water continued to be foul and unusable. To the extent of the impurities resulting from previous acts of the defendant, the plaintiff took the stream in the condition which existed at the time he rented the farm. He had no right to presume that all previous impurities would be dissipated and the stream magically restored to its natural pristine purity the instant that his tenancy began. There is no presumption that the miraculous will occur. He did, however, have a right to presume that the defendant would cease all further dumping of waste and would prevent pollution from entering the stream from its premises, and that he would receive the benefit of the action of the forces of nature in decreasing the impurities that were already there. He is entitled to damages that will compensate him from the injury resulting from what the defendant did or permitted after the inception of the tenancy, and no more.

The jury awarded the plaintiff damages in the sum of $2,000.00. When we consider the size of the verdict and the facts which go to support it, it seems highly probable that the plaintiff was prejudiced by the admission of evidence of protests by a community committee. A new trial should be ordered.

SATHRE, J., concurs in the views expressed by Judge MORRIS.