D. E. STETSON, as Trustee in Bankruptcy, of the Estate of Willard Odegaard, Bankrupt, Plaintiff and Respondent,

v.

INVESTORS OIL, INC., a foreign corporation, Defendant and Appellant,

and

Anchor Casualty Company, Defendant and Respondent.

No. 8248.

Supreme Court of North Dakota.

Feb. 11, 1966.

Vogel, Ulmer & Bair, Mandan, for plaintiff and respondent.

Cox, Pearce, Engebretson, Murray & Anderson, Bismarck, for defendant and appellant Investors Oil, Inc.

Nilles, Oehlert & Nilles, Fargo, for defendant and respondent Anchor Cas. Co.

KNUDSON, Judge.

This is an appeal by Investors Oil, Inc., defendant and appellant herein, from an order of the District Court of Williams County denying its motion for judgment notwithstanding the verdict or, in the alternative, for a new trial, and from a judgment in favor of Willard Odegaard, plaintiff and respondent, and Anchor Casualty Company, defendant and respondent herein. This is the second time that this case has been before this Court. Our opinion on the first appeal appears at 118 N.W.2d 362, wherein we set aside the verdict and the judgment and granted Investors Oil, Inc., a new trial.

The facts presented on this appeal are similar to those on the first appeal and were extensively discussed in our prior opinion. We briefly summarize them here.

Investors is a Minnesota corporation and has an oil well located within the area encompassed by the Garrison Reservoir. About the time the oil well was completed, the water in the Reservoir began to rise and would have covered the well head unless something was done to protect it. Odegaard, who is a construction contractor, entered into a written contract with Investors on February 20, 1958. Under the terms of the contract, Odegaard was to construct a mound directly over the well head so that it would be protected from the rising water and the ice in the Reservoir.

Anchor is also a Minnesota corporation, and on April 4, 1958, executed a bond as surety for Odegaard indemnifying Investors against any loss it might sustain by reason of the failure or default of Odegaard under the contract to a sum of $70,000.00.

The pleadings in this appeal are identical to those on the first appeal except for certain amendments relating to the amounts prayed for by the various parties. For a complete discussion of the pleadings, see our previous opinion. Briefly, Odegaard alleged in his complaint that he had substantially completed construction of the mound and asked for judgment in the sum of $90,872.09, which he claimed was the balance which Investors owed him under the terms of the contract. Investors filed an answer and a counterclaim against Odegaard and Anchor in which it denied that Odegaard had properly performed his obligations in accordance with the contract and that it would cost Investors $57,000.00 to complete the mound in accordance with the terms of the contract. Investors held Anchor responsible for the performance of the contract under its surety bond and then asked that Odegaard's cause of action be dismissed, that Anchor be made a party defendant to the counterclaim, and that it have judgment against Odegaard and Anchor in the sum of $57,000.00 plus $15,600.00 for the time the well had been shut down.

Anchor, after being made a party defendant to the counterclaim, served and filed its answer and reply to the counterclaim denying the general allegations

thereof and alleged that because the terms of the contract had been materially altered by subsequent agreements between Odegaard and Investors, the bond became wholly invalid and unenforceable. Odegaard replied to the counterclaim and alleged among other things that Investors had breached the contract by failing to comply with the contract provision which provided for payment at the end of each fifteen-day period.

After all the parties had rested, Investors moved the court to direct the jury to return a verdict of dismissal and also made a motion for a directed verdict on their counterclaim. Both motions were resisted by Odegaard and Anchor, and both were denied by the court. The jury returned a verdict in favor of Odegaard and against Investors for $52,933.57, and further found in favor of Anchor for a dismissal of the counterclaim against it. Judgment was entered in accordance with the verdict.

The initial question to be determined is procedural in nature and relates to the timeliness of the appeal from the judgment. The notice of entry of judgment, dated October 3, 1963, was served on Investors October 8, 1963, and filed in the office of the clerk of the district court October 9, 1963. On April 23, 1964, Investors caused a notice of appeal to be served on Odegaard and Anchor. The notice was filed on April 24, 1964.

■ An appeal in a civil action may be taken from a judgment by serving and filing a notice of appeal within six months after written notice of the entry of judgment and from an order within sixty days after written notice of the order. Section 28–27–04, N.D.C.C.; Jager v. Grommesh, N.D., 77 N.W.2d 873. The notice of appeal was not served and filed by Investors within six months after the notice of entry of judgment was served. The appeal from the judgment must therefore be dismissed. C. & M., Inc. v. Northern Founders Insurance Co. of North Dakota, N.D., 124 N.W.2d 471.

■ The order denying Investors' motion for judgment notwithstanding the verdict or, in the alternative, for a new trial was dated February 26, 1964, and was served on Investors February 28, 1964. Notice of appeal was served and filed within sixty days of notice of the order, as required by Section 28–27–04, N.D.C.C. Therefore, the appeal from the order is timely. We will review the court's order.

■ On the first appeal of this case, we reviewed the merits of Investors' appeal from the order denying its motion for judgment notwithstanding the verdict. After noting that this court could properly review the order appealed from under the provisions of Section 28–27–29.1, N.D.C.C., we said:

"A motion for a judgment notwithstanding the verdict calls for a review of the court's ruling in denying the motion for directed verdict, and only the grounds assigned on the motion for directed verdict may be considered. See Kinnischtzke v. City of Glen Ullin, 79 N.D. 495, 57 N.W.2d 588; Jager v. Grommesh, N.D., 77 N.W.2d 873.

"The motion of Investors Oil, Inc., for a directed verdict was based upon stated contentions that the evidence established that the work was performed by the plaintiff under a written contract, that prior negotiations were merged in that contract, that the mound was not constructed in substantial compliance with the contract, and that there is no clear and convincing evidence of changes or modifications of the written contract." Odegaard v. Investors Oil, Inc., N.D., 118 N.W.2d 362, 368.

We reproduce the above language because at the second trial Investors stated identical grounds for its motion for a directed verdict for the dismissal of Odegaard's action. In the second trial, Investors also moved the court to direct the jury to return a verdict in favor of Inves-

tors on its counterclaim against Anchor. The grounds stated in support of its motion were that the evidence disclosed that Anchor had issued its bond guaranteeing it as surety for Odegaard's faithful performance of the contract between Odegaard and Investors, that the evidence disclosed the contract had not been properly and completely performed, and that the evidence disclosed that Investors must expend the amount prayed for in its counterclaim to complete the mound provided for in the contract and has sustained the damages prayed for in its counterclaim by reason of the shut down of the oil well because of the failure of the mound. We have already noted that the court denied this motion.

We have reviewed the testimony offered at the first trial as it related to the motion for a directed verdict for dismissal and the record discloses that the testimony offered by the plaintiff at the second trial was substantially the same. In our prior opinion we observed that:

"The evidence shows that the soil on which the mound rested was saturated with water. Testimony is conflicting as to the amount of subsidence or settling that took place. Odegaard testified that a considerable amount of the rock that he dumped as riprap disappeared into the soil below. Both Dallas and Walters were aware of the nature of the soil on which the mound was to be built. Dallas, the engineer employed by Investors Oil, Inc., visited the mound on an average of three times a week during its construction. He had frequent consultations with Odegaard and Walters both before and after the written contract was signed. There is much conflict of testimony concerning these conversations. According to Odegaard, Dallas did not complain about the way the mound was being constructed, while Dallas says that he pointed out to Odegaard that some of the material being used in the top part of the structure did not comply with the contract. Odegaard produced evidence showing the amounts of the various materials that he hauled to and dumped onto the mound site. Investors Oil, Inc., produced an expert witness, Barr, who made borings, samplings and measurements and from them gave his opinion as to the amount of material in the mound and its nature.

" 'The question upon a motion for judgment notwithstanding the verdict is whether the party making the motion was entitled to directed verdict at the time the motion for a directed verdict was made, * * *.'

"Lee v. AAA North Dakota Automobile Club, N.D., 68 N.W.2d 835. On the three points set forth in the motion for a directed verdict substantial issues of fact were presented by the record. At the time the motion for a directed verdict was made there was evidence that had been admitted and was before the jury sufficient to support the verdict. The trial court did not err in denying the motion for judgment notwithstanding the verdict for the defendant Investors Oil, Inc." Odegaard v. Investors Oil, Inc., supra.

Although Investors introduced additional evidence at the second trial by its expert witness, Barr, showing that twenty-seven new borings were made since the first trial, we believe that this merely went to the weight of the evidence and that the record on this appeal supports the same conclusion which we reached on the first appeal of this case. It was not error for the district court to deny Investors' motions for a directed verdict in view of the factual issues presented by the record. The motion for judgment notwithstanding the verdict was properly denied.

Investors has assigned twelve specifications of error in support of its motion for a new trial. The first error assign-

ed is the trial court's instruction to the jury, which reads as follows:

"If language of a contract is conflicting or uncertain, you should consider the contract as a whole and try to ascertain the intention of the parties to the contract. Words in the contract should be given their ordinary meaning when nothing appears to show that they are used in a different sense. In this connection, if you find that the parties thereto, by their subsequent act and conduct, have shown that they have construed it alike, you may follow such adopted construction as being the correct intent of the parties."

Investors contends that it was the duty of the trial court to construe the contract and that it was error to give the jury the above instruction. We believe that it was not error to give this instruction for the reasons set forth in the following discussion.

In connection with specification No. 1, Investors' specifications 2 through 6 relate to alleged errors by the trial court in refusing to grant Investors' Instruction No. 9 and in admitting into evidence, over objection, Odegaard's exhibits numbered 11 through 14. The record discloses that exhibit No. 11 was not offered or admitted into evidence, and we disregard the alleged error as it relates to this exhibit.

Investors' requested instruction No. 9 follows:

"You are instructed that from the testimony of the Plaintiff Willard Odegaard it is clear at the time of the execution of the mound construction contract that Odegaard understood that any reference to the word 'sand' meant 'gravel' and that in this case the proof as to the quantities of gravel and field rock must be determined from the evidence showing the measured quantities of gravel and field rock in place. In this connection you were instructed to disregard plaintiff's Exhibits No. 11,

12, 13 and 14 reflecting claimed numbers of truck loads hauled by the plaintiff as such evidence is not evidence of measurement in place as provided for in the construction contract."

Investors contends that its requested instruction No. 9 should have been given because the testimony offered at the second trial clarified the ambiguity in the contract. The testimony referred to is that of Willard Odegaard. Investors contends that Odegaard's testimony shows that when the word "sand" was used in the written contract, the parties actually meant "gravel." The trial court rejected Investors' contention for the reason that the record contained no testimony showing that Odegaard and Investors knew that when the word "sand" was used in the written contract, it meant "gravel."

In connection with the court's refusal to grant Investors' requested instruction No. 9, Investors argues that the subsequent acts of Odegaard and his employee, Viall, in billing Investors on the basis of measurement in place demonstrate that Odegaard intended that the quantity of gravel placed in the mound should be determined by measurement in place. Although the record discloses that Odegaard did bill Investors for gravel on the basis of measurement in place, this evidence was for the jury to consider in determining the intention of the parties relating to the method of measuring the gravel. We believe that the trial court's denial of Investors' requested instruction No. 9 was supported by the record and that it was proper to allow the jury to determine the intention of the parties relating to the method by which the quantity of gravel placed in the mound was to be measured. Investors' requested instruction No. 9 was properly denied.

Odegaard's exhibits numbered 12, 13 and 14 are records, or copies of records, identified by Odegaard or his employees as showing the amounts of material conveyed to and deposited on the mound by Odegaard during construction. We discussed the ad-

missibility of the exhibits referred to above in our first opinion in this case and determined that they were properly admitted in view of the ambiguous terms of the contract relating to the measurement of the quantity of gravel placed in the mound.

"Each exhibit was objected to as an attempt to prove the quantity of materials by a means other than measurement in place which Investors Oil, Inc., contends is the means of determining quantity specifically provided for by the written contract and cannot be contradicted or varied by parol. Exhibits 12 and 13 deal exclusively with gravel.

"Referring to the written contract, we find that near the beginning it provides that the mound should be made of clean pit run gravel and graded field rock. This paragraph appears later:

"'It is understood further that there is approximately 10,000 cubic yards of gravel now in place and for which allowance shall be made, and that the sand and field rock shall be paid for by measurement in place, and said sand and gravel to be paid for to be within the confines of the mound as herein described.'

"It is clear that the quantity of field rock to be paid for is to be determined by measurement in place, which would exclude evidence of the quantity of rock hauled. The method by which the quantity of gravel is to be determined is not stated, although it must be within the confines of the mound. The provisions with respect to the quantity of gravel are ambiguous. They do not exclude other methods of determining the quantity than measurement in place. The court did not err in failing to exclude exhibits 12 and 13 on the ground that they were immaterial." Odegaard v. Investors Oil, Inc., supra.

We also determined on the first appeal that exhibit 14 was properly admitted under the best evidence rule and that the exhibit did not tend to contradict or vary the terms of the written contract. Odegaard v. Investors Oil, Inc., supra. The admissibility of exhibits 12, 13 and 14 was determined on the first appeal and that is now the law of the case. Our holding that the terms of the contract relating to the method by which the quantity of gravel was to be determined are ambiguous is also the law of the case. Desautel v. North Dakota Workmen's Compensation Bureau, 75 N.D. 405, 28 N.W.2d 378, 384; Jacobson v. Mutual Ben. Health & Accident Ass'n, 70 N.D. 566, 296 N.W. 545, 549; Booren v. McWilliams, 34 N.D. 74, 157 N.W. 698, 699; and Schmidt v. Beiseker, 19 N.D. 35, 120 N.W. 1096.

When this case was tried for the second time, the district court was bound to recognize our determination that the terms of the contract relating to the measurement of the quantity of gravel placed in the mound were ambiguous. Investors argues that the district court failed to determine that there was an ambiguity in the contract, and, if so, to what the ambiguity related. The simple answer to this contention is that there was no need for the district court to make such a determination, since we had already done so on the first appeal. Investors is correct in contending that it is the duty of the court to construe the contract, but when the court has construed the contract as being ambiguous, the jury must then determine the intention of the parties to the contract.

"The trial court determined as a matter of law, and we think quite properly, that the contract here was ambiguous. United States v. Northern Pacific Ry. Co., 8 Cir., 1951, 188 F.2d 277, 280:

"'The question as to whether an ambiguity exists in a contract is to be determined by the court as a matter of law. 17 C.J.S. Contracts § 617; Whiting Stoker Company v. Chicago Stoker Company, 7 Cir., 171 F.2d 248; Golden Gate Bridge & Highway

District of California v. United States, 9 Cir., 125 F.2d 872.'

"Having determined that an ambiguity existed, the court was then presented with an issue of fact: What was the intent of the parties in executing the ambiguous contract? * * * This court said in Durasteel Co. v. Great Lakes Steel Corp., 8 Cir., 1953, 205 F. 2d 438, 441:

" 'An issue of fact is not genuine unless it has legal probative force as to a controlling issue, 35 C.J.S. Federal Courts § 144, p. 1205. * * *'

\* \* \* \* \* \*

"In the Floyd v. Ring Construction Corporation case, supra [8 Cir., 165 F. 2d 125], this court, speaking through Judge Thomas, stated at page 129 of 165 F.2d:

" 'The law is "that the terms of a contract, if it be ambiguous, are matters of fact to be determined in the same manner as other facts; by the jury, if it be a jury case, or by the court, if the jury be waived; while the construction of the contract and its legal effect are questions of law for the court." [Citations]

" 'It is the law, also, as the court observed in this case (66 F.Supp. 436, at page 438), that where ambiguity exists in a contract the construction the parties in their dealings and by their conduct have placed upon the terms will furnish the court [or the jury, if it be a jury case] with persuasive evidence of their meaning. 17 C.J.S. Contracts § 325; City of South St. Paul v. Northern States Power Co., 189 Minn. 26, 248 N.W. 288, 291.' "

Severson v. Fleck, 8 Cir., 1958, 251 F.2d 920.

 In view of the above language, it is clear that when the terms of a contract are ambiguous, it is within the province of the jury to determine the intention of the parties and that the jury may consider the subsequent acts of the parties in determining their intention.

 This court had already construed the contract as being ambiguous and any prejudicial error which may have occurred when the trial court failed to affirmatively instruct the jury that the contract was ambiguous was prejudicial only to Odegaard. Conceivably, the jury may have determined that the contract was not ambiguous. This would certainly have been prejudicial to Odegaard in view of our prior determination. The court's instruction, which was assigned as error by Investors' specification 1, was consistent with our finding that the terms of the contract were ambiguous and we believe that, under the circumstances, the instruction was not prejudicial to Investors.

Investors' specification No. 7 assigns as error the giving of the following instruction relating to the duty to mitigate damages:

"The plaintiff alleges that the defendant did not exercise reasonable care to reduce the damages it claims to have suffered by reason of an alleged breach of contract on the part of the plaintiff, if any. In other words, plaintiff claims that the defendant failed to minimize the damages. I charge you that if you find that Investors Oil, Inc., did suffer damages by failure of the plaintiff to perform under the contract, the law requires that Investors Oil, Inc., make reasonable efforts and exercise ordinary care and diligence to reduce the resulting damages as much as is practicable. Investors Oil, Inc., cannot recover for that which it might reasonably have avoided. When it is practicable to minimize the loss and injury by a reasonable outlay of money—considering the consequential damages which Investors Oil, Inc., claims resulted from the breach—it is incumbent upon Investors Oil, Inc.

to make such reasonable outlay, and which outlay Investors Oil, Inc., could recover as part of the damages claimed for the alleged breach of contract."

Investors contends that instead of giving this instruction the trial court should have given Investors' requested instruction No. 19 and that it was error for the court to refuse the requested instruction, which is set forth below.

"You are instructed that the Defendant, Investors Oil, Inc., had no duty to mitigate damages by rebuilding or repairing the Mound as might be necessary in order to preserve the same unless it could have been done so with reasonable exertion or at a trifling expense. If you find that the Mound could not have been preserved so as to protect the well head above the water of the Garrison Dam without the need of Investors Oil, Inc., to have undertaken substantial work at a substantial expense you must find that Investors Oil, Inc. had no obligation to mitigate the damages."

■■■ The court's instruction sets forth a statement of the general rule relating to the duty to minimize damages, or, as it is sometimes called, the doctrine of avoidable consequences. Investors' requested instruction No. 19 states another version of the same general rule. This court has approved the language used by the trial court in its instruction and has also approved the language used by Investors in its requested instruction No. 19. Nicola v. Meisner, N.D., 84 N.W.2d 702, 705. The language in *Nicola* states the rule substantially as found in the court's instruction and then states another version of the same rule which is substantially the language used in Investors' requested instruction No. 19. The *Nicola* case recognized that the version of the rule found in Investors' requested instruction No. 19 is only another statement of the same rule found in the trial court's instruction. The trial court did not err in choosing one version of the

rule and rejecting the other when both versions were equivalent.

In connection with specification 7, Investors assigns as error the trial court's refusal to grant its requested instruction No. 18 which contained a statement of an exception to the general rule relating to the duty of an injured party to minimize his damages. The requested instruction reads as follows:

"In this case the Plaintiff Willard Odegaard and Third Party Defendant, Anchor Casualty Company, make the claim that since the first trial in October, 1960, the Defendant, Investors Oil, Inc., should have mitigated their alleged damages by re-building or repairing as necessary the Mound. In this connection you are instructed that in a case such as this where the Plaintiff Odegaard had the primary obligation as to performance under the written contract and had the duty to do the work necessary to fulfill the contract, if you should find that Willard Odegaard had equal knowledge of the consequences of non-compliance and opportunity to fulfill the obligation, he alone may be depended on to perform the duty, and it will not avail him to say that Investors Oil, Inc., might have performed the duty for him and thus limited the damages."

In substance, Investors' requested instruction No. 18 would have required the jury to find that since the first trial in October 1960 Odegaard had the primary obligation to perform the contract and if he had equal knowledge of the consequences of noncompliance and opportunity to fulfill the obligation, he alone might have been depended upon to perform the obligation, and may not say that Investors might have performed for him.

This requested instruction contains language used by this court in Baldus v. Mattern, N.D., 93 N.W.2d 144, cited by the appellant. The contract in *Baldus* contained a promise to warrant title to certain

personal property. The language in *Baldus* recognized the exception to the general rule and that it only applied while the contract was subsisting and in force.

"* * * the rule above stated [referring to the general rule] does not apply where the party whose duty to perform a contract had equal opportunity for performance and equal knowledge of the consequences of nonperformance, such party, *while the contract is subsisting and in force*, cannot be heard to say that the plaintiff might have performed for him." [Emphasis supplied.] Baldus v. Mattern, supra.

 Investors' requested instruction No. 18 did not contain the language, "while the contract is subsisting and in force," as set forth in the rule in *Baldus* which was cited by Investors in its brief as authority for its requested instruction No. 18. The record does not disclose that Odegaard gave any indication that he was going to do more work on the mound. Instead, he commenced an action to recover the amount due under the provisions of the contract on the grounds that he had substantially performed his contractual obligations. Odegaard's service of the summons and complaint was a clear indication that he claimed he had completed his performance and that he considered his contractual obligations to be terminated. Investors answered and filed a counterclaim against Odegaard and Anchor for damages for Odegaard's alleged failure to perform according to contract specifications. Investors' only contractual right, subsisting and in force at the time of the first trial, was the right to sue for damages for breach of contract which it did by means of its counterclaim. Odegaard had the right not to perform and be subjected to damages if he could not show he had substantially performed his contractual obligations. The parties by their actions in pursuing their remedies under the law acknowledged that Odegaard's obligation to perform had come to an end, and, therefore, Odegaard's obligation to perform was not subsisting and in force after the time of the first trial in October 1960, as contended by Investors. Investors' requested instruction No. 18 was properly refused because it was not applicable to this case.

Investors' specification 8 asserts that the evidence conclusively shows that Odegaard did not substantially perform the mound construction contract. Specification 11 alleges that the evidence conclusively establishes that the jury failed to follow the court's instruction which stated in substance that if Odegaard had not substantially performed his construction contract, he would not be entitled to recover.

One of the grounds stated by Investors in behalf of its motion for a directed verdict at both trials was that the mound was not constructed in substantial compliance with the contract. In our first opinion we made an extensive search of the record and concluded that:

"At the time the motion for a directed verdict was made there was evidence that had been admitted and was before the jury sufficient to support the verdict." Odegaard v. Investors Oil, Inc., supra.

We discussed Investors' appeal from the order denying its motion for judgment notwithstanding the verdict previously in this opinion and we concluded that at the time Investors made its motion for a directed verdict in the second trial there was sufficient evidence before the jury to support the verdict. Since we have determined that the issue of substantial performance was properly a jury question, there is no error presented by Investors' specifications 8 and 11.

 The admission into evidence of exhibit 31 by the trial court is assigned as error by Investors' specification 9. It was stipulated that the testimony of Dr. Armstrong given at the former trial could be read to the jury in this trial. Based on the stipulation, this testimony was read and introduced as evidence in the second

trial. Exhibit 31 was drawn or sketched upon paper by Dr. Armstrong at the first trial to graphically explain the theory he adduced as an expert witness. This exhibit was offered again in evidence at the same place in Dr. Armstrong's testimony as it was offered in the first trial. It was admitted over objection and Investors now specifies it was error to have admitted it, and contends that Dr. Armstrong's opinion was based in part on the testimony of Barr as given at the first trial, at which time only five sample borings had been made in the mound, whereas after the first trial and prior to the second trial twenty-seven additional sample borings had been made which could not have been taken into consideration by Dr. Armstrong when he testified in the first trial. Now, therefore, it is argued that if Dr. Armstrong had had knowledge of the additional facts he would not now have prepared the same drawing or sketch, known as exhibit 31. Investors argues that for this reason Dr. Armstrong's opinion as an expert witness was not based on evidence of record in the second trial and thus no proper foundation was laid for its admission. We do not agree. Dr. Armstrong's testimony was stipulated into the record. It was read to the jury. He testified as an expert to a theory which he formulated on the basis of his personal observation of the mound, which in his opinion was applicable as an explanation of the occurrence of certain physical changes in the mound. The drawing or sketch, exhibit 31, merely graphically explains the theory the doctor had previously stated in words. The words being stipulated into the record, it was not error to admit the exhibit.

 While Investors' specification 10 assigns as error the failure of the jury to follow the court's instruction relating to the duty of a party dealing with an officiary agent of a corporation to know the extent of the agent's authority, it does not discuss this ground in its brief on this appeal. This court has held, on many occasions, that an error which is not supported by argument in the appellant's brief need not be considered on appeal. Kern v. Art Schimkat Construction Co., N.D., 125 N.W.2d 149; Regent Co-operative Equity Exchange v. Johnston's Fuel Liners, N.D., 122 N.W.2d 151; Moen v. Moen, 65 N.D. 40, 256 N.W. 254; Olson v. Armour & Co., 68 N.D. 272, 280 N.W. 200; Clark v. Josephson, N.D., 66 N.W.2d 539.

Investors' specification 12 assigns as error the failure of the jury to follow the court's instruction which in substance allowed the jury to find that a written contract may be modified or altered by agreements by both parties after the signing and delivery of the written contract. Investors does not discuss this specification in its brief and we do not consider it for the reasons stated above.

The order denying the motion for judgment notwithstanding the verdict or, in the alternative, for a new trial is affirmed.

ERICKSTAD, STRUTZ and TEIGEN, JJ., concur.

BURKE, C. J., did not participate.