**TOMLINSON LUMBER YARD, a Minnesota corporation, Plaintiff/Appellant,**

v.

**Ralph C. ENGEL, Defendant/Appellee.**

**Civ. No. 8922.**

Supreme Court of North Dakota.

Jan. 31, 1974.

Rehearing Denied March 27, 1974.

Conmy, Feste & Bossart, Ltd., Fargo, and Leland F. Hagen, West Fargo, for plaintiff-appellant.

Chauncey T. Kaldor, Hillsboro and Vaaler, Gillig, Warcup, Woutat & Zimney, Grand Forks, for defendant-appellee.

ERICKSTAD, Chief Justice.

By summons and complaint dated November 11, 1969, Tomlinson Lumber Yard, a Minnesota corporation, commenced an action against Ralph C. Engel to adjudicate and foreclose a mechanic's lien arising out of the construction of a hogbarn on Mr. Engel's property. Mr. Engel asserted in his answer that Tomlinson is not entitled to a mechanic's lien on his property or to a foreclosure of such a lien, because the building was constructed in such an unskill-

ful manner that it was of no value to him, has not been completed, and as a consequence he suffered damages in the sum of $40,000 in the fall of 1969 because he was unable to use the building as a hog-farrowing structure. Tomlinson in its amended reply asserted, among other things, that if the building was not completed or if it was not completed in time it was because of the carelessness, negligence and obstruction of Engel.

The trial judge concluded that Tomlinson had substantially complied with the contract for the construction of the hog-farrowing facility and that accordingly Tomlinson was entitled to recover the sum of $11,455 less $1,400, which the court determined to be necessary to remedy defects in the construction and to complete the construction, and that Engel was entitled to a set-off of $9,000 on his counterclaim for the loss of sows and pigs as a consequence of not being able to use the structure for farrowing in the fall of 1969.

Although on appeal Tomlinson demands a trial de novo, Tomlinson does not seriously dispute the trial court's allowance of $1,400 found to be necessary to correct the defects in the building and to complete it. Tomlinson, however, does assert that the trial court was in error in allowing the set-off of $9,000, which Tomlinson asserts to be an allowance for loss of profits not within the contemplation of the parties and therefore too remote to be considered a consequence of Tomlinson's failure to timely complete the structure in a workmanlike manner.

Engel does not take issue with the allowance of $1,400 to correct the defects and complete the facility, nor does he dispute the trial court's conclusion that the contract was substantially complied with. Accordingly, the issue on this appeal revolves around the allowance of the $9,000 for the loss of profits.

During the trial Engel testified that he lost 30 sows and 617 little pigs during November and December of 1969 from the elements as a consequence of Tomlinson's failure to complete the hog-farrowing facility in a workmanlike manner by August 8, 1969.

The contract, which is sketchy in many respects, did not include a completion date. Engel permitted work to be done on the premises after August 8. It is asserted by Tomlinson that by understanding arrived at through a conversation with Engel on August 27, Tomlinson's people were to correct various defects in the construction and complete the construction thereafter, but that when they arrived on the premises on September 2 they were asked to leave the site, and that Engel placed a telephone call to Tomlinson's requesting that its men be taken off the job at that time. In other words, it is Tomlinson's contention that Engel prevented the completion of the project and, accordingly, cannot recover for damages resulting from his inability to use the structure for farrowing purposes thereafter.

In support of its contention that Engel cannot recover for loss of profits in the instant case, Tomlinson refers us to an 1891 decision of the Supreme Court of the United States holding that anticipated profits prevented by the breach of a contract are not recoverable in damages for such breach.

In that case the court laid down the grounds upon which the general rule rests. We quote therefrom.

"The grounds upon which the general rule of excluding profits, in estimating damages, rests, are (1) that in the greater number of cases such expected profits are too dependent upon numerous, uncertain, and changing contingencies to constitute a definite and trustworthy measure of actual damages; (2) because such loss of profits is ordinarily remote, and not, as a matter of course, the direct and immediate result of the nonfulfilment of the contract; (3) and because most requently the engagement to pay such loss of profits, in case of default in the per-

formance, is not a part of the contract itself, nor can it be implied from its nature and terms." Howard v. Stillwell and Bierce Manufacturing Company, 139 U.S. 199 at 206, 11 S.Ct. 500 at 503, 35 L.Ed. 147 (1891).

In *Howard* the plaintiff agreed to complete a flour mill by a certain date and failed to do so. In disallowing damages for loss of profits the court said:

"There was no stipulation in the contract that the defendants should make profits on flour from the wheat ground up by the machinery which the plaintiff contracted to furnish and erect in the mill. Nor were there any special circumstances attending the transaction from which an understanding between the parties could be inferred that the plaintiff was to make good any loss of profits incurred by a delay in furnishing and putting up such machinery, according to the terms of the contract." Howard v. Stillwell and Bierce Manufacturing Company, *supra,* 139 U.S. 199 at 210, 11 S.Ct. 500 at 504.

In addition, Tomlinson asserts that Engel cannot recover for loss of profits arising out of the loss of his sows and pigs, for the reason that he failed to attempt to reduce the damages resulting from his alleged inability to use the hog-farrowing facility. He refers us to a decision of this court in which the doctrine of avoidable consequences is applied.

"The doctrine of avoidable consequences upon which the defendants rely is stated in 15 Am.Jur., Damages, Sec. 27, pages 420–422.

" 'One who is injured by the wrongful or negligent acts of another, whether as the result of a tort or of a breach of contract, is bound to exercise reasonable care and diligence to avoid loss or to minimize or lessen the resulting damage, and to the extent that his damages are the result of his active and unreasonable enhancement

thereof or are due to his failure to exercise such care and diligence, he cannot recover; or, as the rule is sometimes stated, he is bound to protect himself if he can do so with reasonable exertion or at trifling expense, and can recover from the delinquent party only such damages as he could not, with reasonable effort, have avoided. It is also an elementary principle that a party claiming damages must not be in fault in contributing to them by his own want of proper care; and such care must extend to the protection from further loss after the act complained of. If he fails to use such diligence, his negligence is regarded as contributing to his injury, and, furthermore, such damages as could have been so avoided are not regarded as the natural and probable result of the defendant's acts.'

"This rule is applicable to damages to property, and is stated thus in 15 Am.Jur., Damages, Sec. 40, page 439.

" 'Under the rule requiring one injured by the negligence or wrongful act or omission of another to use reasonable efforts to lessen the resulting damage, it is the duty of one whose property is injured or threatened with injury to take reasonable precautions and to make reasonable expenditures to guard against or minimize such injury; and if he fails to do so, he cannot recover damages for any injuries which by the exercise of reasonable care he could have avoided. In other words, the law will not allow one to sit idly by and see his property destroyed through forces negligently set in motion by another and then collect damages occasioned by his own failure to make reasonable exertion to arrest such disaster.' " Nicola v. Meisner, 84 N.W.2d 702 at 705, 706 (N.D.1957).

Engel does not attempt to respond to this latter argument, but instead asserts that al-

though a completion date was not contained in the contract it was known by Tomlinson that the building was to be used as a farrowing facility and that timely completion of the building therefore was essential and that accordingly it was proper for the trial court to allow him damages for loss of profits arising from his inability to use the hog-farrowing facility.

In support of his position, he states that the general rule is that a plaintiff should receive compensation for such consequences or damages as would follow a breach of contract in the normal and usual course of events, citing 5 Williston on Contracts, Rev.Ed., § 1344, p. 3776.

He also refers us to 25 C.J.S. Damages § 24, pp. 662–668.

"As a general rule, sometimes expressed in statutory enactments, the damages to which one party to a contract is entitled because of a breach thereof by the other are such as arise naturally from the breach itself, or such as may reasonably be supposed to have been within the contemplation of the parties at the time of making the contract as a probable result of a breach thereof, or, as sometimes stated, such as were reasonably foreseeable and within the contemplation of the parties at the time they made the contract."

■ It is our view that in the instant case we need not determine whether damages from loss of profits were within the contemplation of the parties at the time of the execution of the contract, for the reason that Engel took action on September 2, 1969, which prevented Tomlinson from correcting the defects in the construction and completing the building. In effect he failed to mitigate his damages. For a more recent application of the doctrine of avoidable consequences in North Dakota than *Nicola*, see Stetson v. Investors Oil, Inc., 140 N.W.2d 349 at page 358. See also Jenkins v. Graham, 237 So.2d 330 at 332 (Fla.App.1970).

The trial court found that the building was substantially completed and the contract substantially performed to the extent that Tomlinson was permitted to perform. We sustain that finding. Since the defects could have been substantially corrected and the building completed within a relatively short time, and certainly before November and December of 1969, the period during which the pigs were lost due to the elements, had Engel permitted Tomlinson to make the corrections and complete the building, the doctrine of avoidable consequences applies to defeat Engel's counterclaim. Accordingly, giving the trial court's findings of fact appreciable weight as to the money necessary to correct the material defects and complete the building, the $1,400 allowance is approved, but the $9,000 set-off for loss of profits is disapproved. The judgment is modified so that it is increased by the amount of $9,000. The case is remanded for disposition not inconsistent with this opinion.

ERICKSTAD, C. J., and VOGEL, TEIGEN, PAULSON and KNUDSON, JJ., concur.